THE STATE OF OHIO, APPELLEE, *v.* MORRIS, APPELLANT.

[Cite as State v. Morris (1978), 55 Ohio St. 2d 101.]

(No. 77-624—Decided July 19, 1978.)

102

104

*Mr. Anthony G. Pizza*, prosecuting attorney, and *Mr. James D. Bates*, for appellee.

*Hayward, Cooper, Straub, Cramer & Co., L. P. A., Mr. John L. Straub, Messrs. Kaplan & Lehman* and *Mr. Robert Z. Kaplan*, for appellant.

SWEENEY, J. The central issue in this cause is one of first impression in this state—whether the General Assembly, in view of Section 1 of Article IV of the Ohio Constitution, may lawfully enact statutes which, while establishing new elements of crime and corresponding degrees of punishment, provide that those convicted or sentenced under the repealed criminal statutes may obtain the benefits of the newly enacted provisions. In particular, the question arises as to whether the General Assembly may require by statute that the trial court review, upon request of the prisoner, his conviction and sentence rendered under the old drug enforcement provision, and either abrogate the conviction or sentence where the offense for which the prisoner was originally charged has no counterpart in the new law, or reduce the sentence where the offense is comparable to a newly defined offense with a lesser penalty.

It is contended that Section 3 of Am. Sub. H. B. No. 300 infringes on the Governor's power under Section 11 of Article III of the Ohio Constitution to grant reprieves, commutations, and pardons for all crimes excluding treason and cases of impeachment, and the courts' judicial powers granted under Section 1 of Article IV of the Ohio Constitution.

With respect to the issue of whether Section 3 infringes on the Governor's power to pardon and commute sentences, the court must initially determine the scope and nature of the pardoning power and resolve whether such power as granted the Governor under Section 11 of Article III of the Ohio Constitution prevents the General Assembly from enacting legislation general in nature which attempts to reduce or remove prior convictions and sentences rendered under prior law.

In Ohio, the term pardon has been defined as " "* * * an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed.' " "A full and absolute pardon releases the offender from the entire punishment prescribed for his offense, and from all the disabilities consequent on his conviction." *State, ex rel. Attorney General,* v. *Peters* (1885), 43 Ohio St. 629, 650. See, also, *State, ex rel. Gordon,* v. *Zangerle* (1940), 136 Ohio St. 371, 376-377. In other words, a full pardon not only results in a remission of the punishment and the guilt, but also a remission of the crime itself. *Knapp* v. *Thomas* (1883), 39 Ohio St. 377, 381; *Peters, supra,* at 651.

Commutation has been defined as "a change of punishment from a higher to a lower degree, in the scale of crimes and penalties fixed by the law." *In re Victor* (1877), 31 Ohio St. 206, 207.

Included in the concept of pardon is amnesty, which is similar in all respects to a full pardon, insofar as when it is granted both the crime and punishment are abrogated. However, unlike pardons, an amnesty usually refers to a class of individuals irrespective of individual situations. See 1 Bishop on Criminal Law (9 Ed.), 643. Because the exercise of the power to pardon and the power to grant general amnesties render the same result—the abrogation of a conviction or reduction of sentence for an indivdual—and are of similar origin, no distinction is generally made between the two. See *United States* v. *Klein* (1871), 80 U. S. 128, 147; Weihofen, Legislative Pardons, 27 Cal. L. Rev. 376; Rubin, Law of Criminal Correction (2 Ed.), 667. However, the power to grant general amnesties has been recognized as posited traditionally with the legislative branch. See *Brown* v. *Walker* (1896), 161 U. S. 591, 601; *State* v. *Bowman* (1907), 145 N. C. 452, 59 S. E. 74; *In re Victor, supra,* at page 208.

In the instant cause, the General Assembly attempted to apply the new drug enforcement provisions of Am. Sub. H. B. No. 300 to those already convicted and sentenced. To

the extent that individuals could either have their sentences reduced or their convictions and sentences abrogated, the Act in effect grants pardons and commutations to those convicted and sentenced under the old laws. The question becomes whether the General Assembly may grant general pardons by requiring trial courts to resentence individuals under the new law by comparing the old and new offenses.

In *State, ex rel. Jackman,* v. *Court of Common Pleas of Cuyahoga County* (1967), 9 Ohio St. 2d 159, this court set forth a summary of the principles to be employed by this court in determining whether an enactment of the General Assembly is constitutional. The court stated at page 161:

"'*** [W]hen an enactment of the General Assembly is challenged, the challenger must overcome a strong presumption of constitutionality."

Citing paragraph one of the syllabus in *State, ex rel. Dickman,* v. *Defenbacher, Dir.* (1955), 164 Ohio St. 142, the *Jackman* court noted that unless the legislation and constitutional provisions are clearly incompatible beyond a reasonable doubt, the legislation should not be declared unconstitutional .The court emphasized that the "*** state Constitution is primarily a *limitation* on legislative power of the General Assembly" as opposed to a grant of power and thus, "the General Assembly may pass any law unless it is specifically prohibited by the state or federal Constitutions," or prohibited by a " 'necessary and obvious' implication." *Jackman, supra,* at pages 162-163.

In the instant cause, it is clear that there is no *express* limitation contained in the state Constitution on the power of the General Assembly to exercise the general pardoning power. Therefore, the issue revolves around whether the grant of the pardoning power to the Governor under Section 11 of Article III of the Ohio Constitution constitutes a "necessary and obvious" implication that the General Assembly is precluded from exercising the pardoning power.

In at least four states which have addressed a similar

issue, courts have determined that the grant of the pardoning power to the Governor was exclusive in the sense that the respective legislatures could not pass laws which attempted to retroactively apply criminal standards that were less harsh. In *People* v. *Freleigh* (1952), 334 Mich. 306, 54 N. W. 2d 599, the Supreme Court of Michigan reviewed the constitutionality of an Act wherein the legislature, in enacting new provisions for the sentencing of habitual criminals, attempted to give authority to judges to review prior mandatory sentences of those convicted of more than one felony under the prior law and to reduce sentences accordingly. In a unanimous decision, the court held that the statute reducing penalties of those already sentenced was unconstitutional, since the power to commute sentences rests exclusively with the Governor.

In *People* v. *Herrera* (1973), 183 Colo. 155, 516 P. 2d 626, the Supreme Court of Colorado unanimously struck down a statute which authorized postconviction review of sentences and allowed retroactive application of changed legal standards. Although the court recognized and agreed with the "laudable, beneficent purposes motivating the enactment" of the statute (*Herrera* at 160), the court felt constrained to hold that the statute unacceptably infringed on the Governor's exclusive power to grant commutations; *i. e.*, "the power to reduce punishment from a greater to a lesser sentence" (*Herrera* at 161). Sentences that were improperly reduced were subsequently ordered reinstated. *People* v. *Mankowsky* (Colo. 1974), 529 P. 2d 314.

In *State, ex rel. Smith,* v. *Blackwell* (Tex. Crim. App. 1973), 500 S. W. 2d 97, and *Commonwealth* v. *Sutley* (Pa. 1977), 378 A. 2d 780, the courts of those respective states were confronted with the issue of whether new drug enforcement laws, which empowered courts to resentence under the new law those individuals who were previously convicted of certain offenses involving marijuana under prior law, were constitutional. The Court of Criminal Appeals of Texas found that the resentencing statute was an

infringement of the Governor's exclusive clemency powers; the majority of the Supreme Court of Pennsylvania held that the new statutes, by requiring that courts open judgments, encroached upon the judicial power.

*Dicta* contained in several of the early Ohio cases, such as *In re Victor, supra* (31 Ohio St. 206), at page 208, and *In re Kline* (1904), 70 Ohio St. 25, support the view of the above jurisdictions that the pardoning power granted the Governor is "exclusive" in the sense that the General Assembly may not pass retroactive laws which abrogate crimes or reduce penalties.

However, another view holds that the pardoning power, at least with respect to the power to grant amnesties or general pardons, is not exclusively in the hands of the executive branch, regardless of the fact that the executive branch has been granted the power to pardon. See *In re Briggs* (1904), 135 N. C. 118, 124, 47 S. E. 403; *Sutley, supra,* 790-800 dissenting opinion; Rubin, Law of Criminal Correction, *supra,* at 675; Bishop, on Criminal Law *supra,* at 645; 3 Attorney General's Survey of Release Procedures, Pardon (1939), 102-113, 226, 310-312. Under this view, the power to pardon has been traditionally vested in the legislative branch, and the grant of such power to the executive branch, rather than an implied limitation precluding exercise of the power by the legislative branch, is a special grant of authority to a coordinate branch of government to grant pardons in certain instances. As noted in Bishop on Criminal Law, *supra,* at 645:

"It is the common style of our written constitutions to confer on the Governor specific executive powers, and on the legislature general legislative ones; the result whereof would seem to be that a Governor has only the pardoning power expressly given, and a legislature all not expressly withheld. * * * Ordinarily, as the function is both executive and legislative in the country whence we derive our unwritten laws, the vesting of the power in the Governor would appear not to make it exclusive in him."

A careful reading of Section 11 of Article III of the Ohio Constitution indicates that the grant of the pardon-

ing power to the Governor is not a limitation on the General Assembly's power to pardon. The thrust of the section indicates the opposite result.

Under Section 11 of Article III of the Ohio Constitution it is provided in part:

"He [the Governor] shall have power, after conviction, to grant reprieves, commutations, and pardons, for all crimes and offenses, except treason and cases of impeachment * * *. Upon conviction for treason, he may suspend the execution of the sentence, and report the case to the General Assembly, at its next meeting, when the General Assembly shall either pardon, commute the sentence, direct its execution, or grant a further reprieve."

The original version, contained in Section 5, Article II, Constitution of Ohio, 1802, read:

"He shall have the power to grant reprieves and pardons, after conviction, except in cases of impeachment."

The debates over the 1850-51 revision of the state Constitution are inconclusive regarding the understanding of the drafters as to the effect of placing the power to pardon in the hands of the Governor. For example, in response to a question concerning the necessity for a new provision relating to treason which prevented the Governor from exercising the pardoning power, a participant explained:

"In treason, above all things, he thought the State should retain the power of punishing those guilty of the crime, because the State was immediately interested, and in the absence of such a provision might suffer materially." 1 Report of the Debates and Preceedings of the Convention for the Revision of the Constitution of the State of Ohio (1850-1851), 307.

Whether the individual reflected by his use of the word "retain" his understanding that once the pardoning power is granted to the Governor, it is exclusive in his hands, or his understanding that the Governor shares in the power when specifically granted it, cannot be determined.

However, it cannot be seriously contended that the

new provision wherein the General Assembly may pardon those convicted of treason was a special grant of power to the General Assembly in this one instance.

The section in which the provision appears concerns the specific powers granted to the Governor, and cannot be construed as a specific grant of power which may be exercised by the General Assembly. Such a construction ignores the basic principle of law that the state Constitution does not grant power to the General Assembly, but only provides limitations to that power. Thus, the provisions in Section 11 of Article III relating to the General Assembly's power to pardon those convicted of treason can only be a manifestation of the framers' recognition of that body's inherent power to grant general pardons.

Additional evidence to support the conclusion that the Governor's power to grant pardons is not exclusive by implication can be seen in the provision of Section 11 of Article III which indicates that even in situations where the Governor may grant pardons, the General Assembly may enact regulations providing for the mode or manner of applying for pardons from the Governor. The provision requires the Governor at each regular session of the General Assembly to report any cases in which he granted a reprieve, commutation, or pardon. He is required to state the name and crime of the convict, the sentence, its date, and the date of commutation, pardon, or reprieve, "with his reasons therefor."

In answering the question why a reporting requirement was placed in this section, a participant to the debates responded in part:

"The committee inserted that clause into the report for the purpose, that the legislature at its annual or biennial sessions might know what the Governor had done during the vacation in the exercise of the pardoning power. It was known that the exercise of that power was much complained of. They all knew in what manner petitions were got up—it was an easy matter to get them up as every one knew—it was but too easy to excite the sym-

pathies of men in behalf of the convicted criminal." Debates, *supra,* at 306.

Clearly, the thrust of the provision requiring reports to the General Assembly was to provide moral pressure on the Governor to cautiously exercise his power to pardon. The section cannot be read as indicating the extent to which the General Assembly may participate in the pardoning process. Again, the Governor's powers are those that are specifically granted. In Section 11 of Article III, the Governor was provided the pardoning power with specific limitations and controls. The section does not define the limits of the General Assembly's power to pardon.

The court notes that the above holding does *not* imply that the General Assembly may interfere with the discretion of the Governor in granting pardons. Any such interference has consistently been held unconstitutional. See *The Laura* (1885), 114 U. S. 411, 414; *Schick* v. *Reed* (1974), 419 U. S. 256; see, generally, Criminal Procedure: Constitutionality of Colorado Post-Conviction Remedies Statute Allowing Retroactive Relief Under Changed Legal Standards, 46 Univ. of Colo. L. Rev. (1974), 316. Thus, in describing the power to pardon in the hands of the Governor as "exclusive," the term is appropriate insofar as it connotes the meaning that no other branch of government may prevent its exercise by the Governor.

The second major contention in support of the proposition that Section 3 of Am. Sub. H. B. No. 300 is unconstitutional is that it infringes on the judicial authority vested in courts under Section 1 of Article IV of the Ohio Constitution.

At the outset, it should be noted that exercise of the pardoning power has never been held to constitute an infringement of the judicial power. Our holding in this cause that the General Assembly possesses the general pardoning power precludes any contention that its exercise would constitute an infringement on the judiciary.

Furthermore, the fear that by upholding Section 3 of

Am. Sub. H .B. No. 300 this court will in effect make all final judgments of conviction and sentence subject to doubt has no rational basis.

That convictions have rarely been certain is evidenced by the number of judicial decisions which have retroactively applied new constitutional standards as set forth by a court of last resort. As noted in Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U. Pa. L. Rev. (1972), 120, 146, "adding the possibility of retroactive application of legislative changes does not significantly increase the amount of uncertainty."

It has long been recognized in this state that the General Assembly has the plenary power to prescribe crimes and fix penalties. *Municipal Ct. v. State, ex rel. Platter* (1933), 126 Ohio St. 103; *In re Victor, supra,* at 208; *Peters, supra* (43 Ohio St. 629) at 647. Laws providing for definite sentences and laws providing the courts with discretion in setting the penalty within well-defined limits have both been upheld as within the power of the General Assembly to enact. The General Assembly's decision to require that trial courts abrogate or reduce the prior convictions and sentences of those convicted and sentenced under the old drug enforcement law in terms of the new drug enforcement law is a proper exercise of its plenary power and shows no disrespect for the judicial role in the enforcement of the criminal laws. See dissenting opinion in *Sutley, supra,* at 791-792.

Under Section 3 of Am. Sub. H. B. No. 300, the General Assembly has not attempted to review the findings of guilt as determined by the trial court. Nor has the General Assembly in effect found that the court has abused its discretion in rendering sentences. Rather, the General Assembly has made its own determination that the proscribed conduct in the area of drug abuse should be redefined and the corresponding sentences revised. The decision to apply the new criminal definitions and sentences retroactively does not infringe on the judicial powers, since at all times it is the power of the General Assembly to establish

crimes and penalties. Simply because final judgments may be affected does not, *per se,* render the General Assembly's exercise of its legislative powers an infringment on those of the judiciary.

It is contended further in effect that a conviction and sentence, as part of judgment, are final and cannot therefore be altered by retroactive legislative enactments. A similar argument was rejected in *Peters, supra* (43 Ohio St. 629), where, in upholding the constitutionality of a criminal statute which provided a means for prisoners already convicted of an offense to reduce their sentences by obtaining credits for good conduct, this court, at page 651, stated:

"It may be claimed that this act, so far as it affects past sentences, is retroactive, and therefore unconstitutional. This can not be, as by this provision the legislature is only prevented from interfering with the vested rights of individuals.

"It does not hinder the state from divesting itself of any right of claim of its own. The only party who could object is the prisoner, and he can not, where it is clearly for his benefit." See, also, the dissent in *Sutley, supra,* at 794.

In the instant cause, only the state has a protected interest in the continuing punishment of convicted criminals and it is unquestionable that the state may waive its vested rights obtained through prior judgments. As noted previously, the power to define crimes and establish penalties rests with the General Assembly alone. The court, outside of its power to apply the law to individual cases, has no vested interest in its judgment. Clearly, there is no constitutional provision delimiting the General Assembly's power to pass retroactive legislation as under review in this cause.

Having determined that Section 3 of Am. Sub. H. B. No. 300 is not an infringement on either the executive or judicial powers, the court is confronted with the following reasons provided by the trial court in holding the section unconstitutional.

The trial court found that the statute violated the

prisoner's constitutional rights in that the resentencing procedure under Section 3 was arbitrary and discriminatory. Interestingly, only the prosecutor raised these arguments in his memorandum to that court, which the court subsequently adopted as a basis for its opinion.

The objection that the resentencing provisions of Section 3 violate the prisoner's constitutional rights is groundless. The resentencing provisions are no more arbitrary or discriminatory than general sentencing procedures as employed in this state under R. C. Chapter 2929. Furthermore, Morris has not complained of any violation of his rights except for the fact that the trial court refused to apply Section 3, and we see no justification for the trial court, *sua sponte*, to find a violation of a constitutional right where there has been no demonstration of such as in this cause.

Finally, the trial court found that Section 3 of Am. Sub. H. B. No. 300 was unconstitutionally vague, in that the General Assembly failed to adequately provide the courts sufficient guidelines for comparing the old and new offenses. The court reasoned that it, in effect, was asked to assume the role of the General Assembly in applying the new criminal standards.

This court rejects that contention, and notes, without prescribing at this time the proper method for determining comparable offenses under the old and new drug enforcement laws in resentencing individuals under Section 3 of Am. Sub. H. B. No. 300, that other Ohio courts have been able to apply the resentencing provisions in a reasonable fashion. See *State* v. *Goodnight* (1977), 52 Ohio App. 2d 333; *State* v. *Rogers* (1976), 346 N. E. 2d 352, cited in Swisher and Young, Drug Abuse Control, a Guide to the 1975 Ohio Drug Act, at 11.05.

Having found that Section 3 of Am. Sub. H. B. No. 300 is constitutional, and that the trial court has jurisdiction to review the sentences and convictions of individuals convicted under the prior law, the court reverses the judg-

ment of the Court of Appeals and remands the cause to the trial court for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

W. Brown and P. Brown, JJ., concur.
Herbert, J., concurs in the syllabus and judgment.
O'Neill, C. J., Celebrezze and Locher, JJ., dissent.

O'Neill, C. J., dissenting. The majority correctly concludes that Am. Sub. H. B. No. 300 "in effect grants pardons and commutations to those convicted and sentenced under the old laws."

Section 11, Article III of the Ohio Constitution vests the Governor with the "* * * power, after conviction, to grant reprieves, commutations, and pardons, for all crimes and offenses, except treason and cases of impeachment, upon such conditions as he may think proper; subject, however, to such regulations, as to the manner of applying for pardons, as may be prescribed by law."

It is my opinion that the foregoing constitutional provision grants exclusive authority to a Governor to commute a sentence and that, by implication, the General Assembly has no such power. *People* v. *Freleigh* (1952), 334 Mich. 306, 54 N. W. 2d 599; *State, ex rel. Smith,* v. *Blackwell* (Tex. Crim. App. 1973), 500 S. W. 2d 97; *Commonwealth* v. *Sutley* (Pa. 1977), 378 A. 2d 780; *People* v. *Herrera* (1973), 183 Colo. 155, 516 P. 2d 626. It follows, as the Supreme Court of Colorado observed in the latter case, at page 162, that "Any attempt * * * to exercise such power [reprieve, commutation and pardon] by the judicial department, even though legislatively sanctioned, would be a violation of the doctrine of separation of powers * * *."

I, therefore, respectfully dissent.

Celebrezze and Locher, JJ., concur in the foregoing dissenting opinion.