*517
Per Curiam.

Case No. 93-1165 requires this court to decide three issues: (1) Does Section 11, Article III of the Ohio Constitution authorize the General Assembly to prescribe procedural prerequisites to the exercise of the Governor’s clemency power? (2) If so, does the General Assembly have the authority to prescribe procedural prerequisites for commutations as well as pardons? and (3) Has the General Assembly in fact imposed procedural prerequisites upon the Governor’s clemency power?
We will address case No. 92-1350, which raises issues also implicated by case No. 93-1165, in Part IV of this opinion.
I
Section 11, Article III of the Ohio Constitution provides the authority for the Governor’s clemency power:
“He [the Governor] shall have power, after conviction, to grant reprieves, commutations, and pardons, for all crimes and offenses, except treason and cases of impeachment, upon such conditions as he may think proper; subject, however, to such regulations, as to the manner of applying for pardons, as may be prescribed by law. Upon conviction for treason, he may suspend the execution of the sentence, and report the case to the general assembly, at its next meeting, when the general assembly shall either pardon, commute the sentence, direct its execution, or grant a further reprieve. He shall communicate to the general assembly, at every regular session, each case of reprieve, commutation, or pardon granted, stating the name and crime of the convict, the sentence, its date, and the date of the commutation, pardon, or reprieve, with his reasons therefor.”
Section 11, Article III was adopted as part of extensive revisions to the Constitution made in 1851. Prior to 1851, the Governor’s clemency power was set forth in Section 5, Article II of the Ohio Constitution of 1802, which provided in its entirety: “He [the Governor] shall have the power to grant reprieves and pardons, after conviction, except in cases of impeachment.” This section was modeled after Section 2, Article II of the United States Constitution, which gives the President the “Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment.”
Both the United States Constitution and the Ohio Constitution of 1802 conferred broad powers of executive clemency. The only limitations on the clemency power were that it could be exercised only after conviction (Ohio Constitution) and that clemency could not be granted in cases of impeachment (both Ohio and United States Constitutions). Neither Constitution authorized the enactment of laws to curtail the executive’s clemency power. However, with the adoption of *518 Section 11, Article III, Ohio significantly altered its provision on executive clemency.
Although the Ohio Constitution places the clemency power in the hands of the Governor, that power clearly is not absolute. The Governor’s clemency power is subject to whatever restrictions are contained in Section 11, Article III. See State v. Morris (1978), 55 Ohio St.2d 101, 111, 9 O.O.3d 92, 98, 378 N.E.2d 708, 714. These restrictions provide that clemency may be granted only after conviction, may be granted only partially in cases of treason, and not at all in cases of impeachment.
Though the Governor’s power to grant clemency is limited, the only limits on the clemency power are those specifically authorized by Section 11, Article III. Knapp v. Thomas (1883), 39 Ohio St. 377, 392. The General Assembly may not interfere with the discretion of the Governor in exercising the clemency power. Morris, 55 Ohio St.2d at 111, 9 O.O.3d at 98, 378 N.E.2d at 714. Likewise, the Governor’s exercise of discretion in using the clemency power is not subject to judicial review. See State ex rel. Whiteman v. Chase (1856), 5 Ohio St. 528, 535; Knapp, 39 Ohio St. at 391.[3]
The specific limitation at issue in this case comes from the “subject to” clause of Section 11, Article III:
“He [the Governor] shall have power, after conviction, to grant reprieves, commutations, and pardons, for all crimes and offenses, except treason and cases of impeachment, upon such conditions as he may think proper; subject, however, to such regulations, as to the manner of applying for pardons, as may be prescribed by law.” (Emphasis added.)
It is apparent from the structure of the first sentence of Section 11 that the “subject to” clause modifies the word “power.” The first clause of the first sentence provides the Governor the power to grant executive clemency. The presence of the word “however” in the second clause indicates a limit on that power. Thus, the Governor’s power to grant clemency is limited by the “subject to” clause. However, the authority granted to the General Assembly under the *519 “subject to” clause is itself limited to regulating the application process. Furthermore, as we conclude below, the “subject to” clause provides the General Assembly only with the authority to regulate “as to the manner of applying for pardons.” (Emphasis added.) Consistent with Knapp and Morris, the authority to issue regulations is further limited in that those regulations may not interfere with the Governor’s discretion to grant or deny pardons.
We believe that the authority to prescribe regulations “as to the manner of applying for pardons” provides the General Assembly with the authority to prescribe a regulatory scheme governing the manner and procedure of applying for pardons. Unlike the court of appeals, we do not believe that the General Assembly has the authority to regulate only the applicants for pardons. We interpret the language of the “subject to” clause as providing the General Assembly with the authority to establish a regulatory scheme that includes prerequisites to the exercise of the Governor’s power to grant pardons.[4] Our interpretation is consistent with the purpose of the “subject to” clause, which was to provide the General Assembly with the authority to establish procedural safeguards against the granting of pardons. The drafters of Section 11 were concerned that without such safeguards, the Governor might grant pardons without thorough consideration or might be too easily influenced by political factors to grant or deny clemency for reasons other than the merits of an inmate’s claim. See 1 Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Ohio 1850-1851 (1851) 306-307. Consistent with the language and purpose of Section 11, the authority to regulate the application process must also include the authority to establish prerequisites to the Governor’s exercise of the power to grant pardons. To exempt the Governor from the “subject to” clause would allow the Governor to circumvent the procedural safeguards for which the clause was adopted, rendering the clause meaningless.
For the foregoing reasons, we hold that the General Assembly is authorized by Section 11, Article III of the Ohio Constitution to prescribe procedural prerequisites to the application process for executive pardons. In order to be valid, any grant of a pardon must be based on an application that complies with the procedural prerequisites. The General Assembly is not authorized to prescribe substantive regulations concerning the Governor’s discretion in the use of the *520 clemency power, or in any way intrude on the discretion of the Governor. For example, the General Assembly could not, acting under the limited authority provided by Section 11, Article III, enact a statute requiring the Governor to accept the recommendation of the APA in the exercise of his clemency power. Likewise, the General Assembly could not enact a statute forbidding the Governor from exercising the clemency power in any specific class of cases.
II
Having determined that Section 11, Article III authorizes the General Assembly to prescribe procedural regulations as to the application process for pardons, we next consider whether that authority extends to any other types of clemency.
The language of Section 11 expressly provides the extent of the General Assembly’s authority to regulate the application process for executive clemency: “[The Governor] shall have power * * * to grant reprieves, commutations, and pardons * * *; subject, however, to such regulations, as to the manner of applying for pardons, as may be prescribed by law.” (Emphasis added.) The language of Section 11 clearly provides the General Assembly with the authority to regulate the application process for pardons. However, the “subject to” clause, does not implicate in any way the Governor’s powers with respect to commutations or reprieves.[5] The issue then becomes whether commutations, even though they are not mentioned within the “subject to” clause, may also be regulated.
Plaintiffs argue that the authority to regulate the application process for “pardons” also includes the authority to similarly regulate commutations. They reach that conclusion based upon their perception that the word “pardons” may be interpreted broadly to include all types of executive clemency. In other words, the plaintiffs argue that commutations are a subset of pardons, and by using the word “pardons” the drafters intended that the General Assembly have the power to regulate commutations as well as pardons.
We do not believe that commutations are a subset of pardons. The first step in determining the meaning of a constitutional provision is to look at the language of the provision itself. Where the meaning of a provision is clear on its face, we will *521 not look beyond the provision in an attempt to divine what the drafters intended it to mean. Slingluff v. Weaver (1902), 66 Ohio St. 621, 64 N.E. 574.
The meaning of Section 11 is obvious after a careful review of that provision. The first sentence provides the Governor with the power to grant three different types of clemency — reprieves, commutations, and pardons. The end of the first sentence is equally clear in providing the General Assembly with the authority to regulate the application process for only one type of clemency — pardons. The language of Section 11 could not be clearer in limiting the General Assembly’s authority to regulate only pardons. Moreover, any argument that commutations are a subset of pardons is, as shown below, simply unsupportable.
The canons of statutory interpretation, which guide our interpretation of constitutional and statutory text, support the conclusion that the word “pardons” in the “subject to” clause does not include commutations. This court has consistently held that words used more than once in the same provision have the same meaning throughout the provision, unless there is clear evidence to the contrary. State ex rel. Bohan v. Indus. Comm. (1946), 146 Ohio St. 618, 33 O.O. 92, 67 N.E.2d 536, paragraph one of the syllabus, overruled on other grounds, State ex rel. Walker v. Indus. Comm. (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190. The three types of clemency are each listed together four different times in Section 11. In fact, the only time one type of clemency is mentioned alone is when “pardons” appears within the “subject to” clause. To define pardons to include commutations when the two types of clemency are each listed together so many times within the same small section would be nonsensical. Additionally, interpreting “pardons” to include commutations has the problem of rendering the presence of the word “commutations” useless. Our prior cases require that we reject that result, because if possible we must give meaning to every word in a provision. Steele, Hopkins & Meredith Co. v. Miller (1915), 92 Ohio St. 115, 110 N.E. 648.
The argument that commutations are a subset of pardons is also contrary to our previous decisions where we have held that commutations and pardons are two entirely different types of clemency. In In re Victor (1877), 31 Ohio St. 206, 207, this court defined a “commutation” as “a change of punishment from a higher to a lower degree, in the scale of crimes and penalties fixed by the law * * In State ex rel. Atty. Gen. v. Peters (1885), 43 Ohio St. 629, 650-651, 4 N.E. 81, 87-88, this court defined “pardons”:
“A pardon discharges the individual designated from all or some specified penal consequences of his crime. It may be full or partial, absolute or conditional.
“A full and absolute pardon releases the offender from the entire punishment prescribed for his offense, and from all the disabilities consequent on his conviction.
*522 “[A] commutation is ‘the change of a punishment to which a person has been condemned into a less severe one.’
“It is not a conditional pardon, but the substitution of a lower for a higher grade of punishment * * (Citation omitted and emphasis added.)
The Peters case conclusively established that pardons are different from, and do not include, commutations. The interpretation of Section 11 ends here, with the unmistakable conclusion that the “subject to” clause does not provide the authority to regulate commutations.
Instead of approaching Section 11 by considering its plain language, the dissent attempts to justify its interpretation that the word “pardons” in the “subject to” clause includes commutations by wading into the morass of speeches made by the drafters of Section 11. The dissent bases its interpretation on the perception that because several drafters did not distinguish between commutations and pardons in their speeches regarding the reporting clause of Section 11, they intended that the word pardon in thé “subject to” clause include commutations. Such a conclusion is simply incomprehensible. We do not agree that imprecise speeches by individual drafters give courts carte blanche to ignore the plain language of a constitutional provision. Those drafters were precise when they wrote the reporting provision. That provision, which is the last sentence of Section 11, precisely distinguishes among the three different types of clemency: “He shall communicate to the general assembly, at every regular session, each case of reprieve, commutation, or pardon granted, stating the name and crime of the convict, the sentence, its date, and the date of the commutation, pardon, or reprieve, with the reasons therefor.” (Emphasis added.) Moreover, as we stated in Slingluff, we will not look to the history of a provision where, as here, the language of the provision is clear.
Given our tradition of interpreting statutory and constitutional language, the only plausible interpretation of Section 11 is the one we adopt today — the “subject to” clause provides authority to the General Assembly to regulate the application process for pardons and not commutations.
Ill
Because we have established that Section 11, Article III authorizes the General Assembly to regulate the application process for pardons, we must determine whether the General Assembly has, in fact, prescribed any regulations. Plaintiffs claim that the General Assembly, through R.C. Chapter 2967 in general and R.C. 2967.07 in particular, has established procedural requirements that must be fulfilled before a pardon may be granted. Defendants argue that R.C. 2967.07 is merely a directory statute setting forth procedures which the Governor may choose to ignore.
*523 R.C. 2967.07 provides:
“All applications for pardon, commutation of sentence, or reprieve shall be made in writing to the adult parole authority. Upon the filing of such application, or when directed by the governor in any case, a thorough investigation into the propriety of granting a pardon, commutation, or reprieve shall be made by the authority, which shall report in writing to the governor a brief statement of the facts in the case, together with the recommendation of the authority for or against the granting of a pardon, commutation, or reprieve, the grounds therefor and the records or minutes relating to the case.”
As we determined above, Section 11, Article III of the Ohio Constitution authorizes the General Assembly to regulate the application process only with respect to pardons, and not commutations or reprieves. Because the grant of the clemency power with respect to commutations and reprieves is unfettered, any regulation by the General Assembly that acts to limit the Governor’s power to grant commutations or reprieves is a violation of the Constitution. To the extent that the regulatory scheme under R.C. Chapter 2967 places limits or preconditions on the Governor’s power to grant commutations or reprieves, it is unconstitutional and void. We are particularly concerned with R.C. 2967.07. As we note below, the General Assembly in R.C. 2967.07 has provided a regulatory prerequisite to the granting of commutations, as well as pardons and reprieves: a clemency application must be made to and acted on by the Adult Parole Authority before the Governor may grant clemency. We do not question the wisdom of this legislation, but it has no constitutional underpinnings beyond pardons.
The question becomes whether we may sever the unconstitutional references to commutations and reprieves from the otherwise constitutional portions of R.C. 2967.07. R.C. 1.50 provides that statutory provisions are presumptively severable: “If any provisions of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable.” In order to sever a portion of a statute, we must first find that such a severance will not fundamentally disrupt the statutory scheme of which the unconstitutional provision is a part. We set forth the test for determining whether an unconstitutional provision may in fact be severed in Geiger v. Geiger (1927), 117 Ohio St. 451, 466, 160 N.E. 28, 33:
“ ‘(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is *524 stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?’ ” Id., quoting State v. Bickford (1913), 28 N.D. 36, 147 N.W. 407, paragraph nineteen of the syllabus.
The references to commutations and reprieves meet the test for severability provided in Geiger. R.C. 2967.07 provides a regulatory scheme that imposes the same regulations upon the three types of clemency. In other words, it is as if there were, three separate but identical statutes each regulating one type of clemency. Therefore, the regulation of each type of clemency is essentially independent of the others. Because of their independence, the regulation of commutations and reprieves is not so connected to the regulation of pardons that without reference to commutations and reprieves the regulatory scheme will not give effect to the intention of the General Assembly. The requirements of the regulatory scheme concerning pardons will not change. We need only excise the constitutionally offensive references to commutations and reprieves in R.C. 2967.07 and need not add any other language in order to give effect to its regulatory scheme. Thus, we hold that, pursuant to the Ohio Constitution, R.C. 2967.07 may regulate the application process for pardons only.
Because only a portion of the statute is constitutional, only the Governor’s grant or denial of a pardon is “subject to” the application process outlined in R.C. 2967.07. His power to grant or deny commutations is not subject to those regulations. Therefore, the commutations at issue in this case remain valid.
The validity of the one pardon granted without an application in compliance with the procedure outlined in R.C. 2967.07 remains at issue. We must now determine whether this noncompliance precluded the Governor from granting a pardon. As we noted above, the Governor exercises the pardoning power “subject to” these regulations, even though the General Assembly is not authorized by Section 11, Article III to intrude in any way upon the Governor’s discretion to grant or deny a pardon.
The exercise of the pardoning power involves two distinct elements — the application process and the consideration process. The phrase “manner of applying” for pardons includes the entire application process, which encompasses the filing of the application itself, the investigation, the recommendation, and the full report compiled by the APA. We find that the General Assembly’s authority to regulate the application process extends to the time just before the Governor reaches a substantive decision concerning a pardon. Once this point is reached, the General Assembly’s constitutionally granted authority to regulate procedurally the pardoning power of the Governor is at its end.
By its clear terms, R.C. 2967.07 contemplates that an investigation by the APA that leads to a recommendation for or against a pardon may be initiated in two *525 distinct ways. The first way is for an applicant (or someone on the applicant’s behalf) to file a pardon request directly with the APA. The second way is for the Governor to direct that the investigation occur. The real issue in this case is whether the Governor is required to await the APA investigation and recommendation before he may grant a pardon.
The first sentence of R.C. 2967.07 requires that all applications for pardons shall be made to the APA. The General Assembly has chosen the word “all” to indicate that every request for a pardon must go to the APA for evaluation. In addition, the General Assembly has chosen to use the word “shall” in R.C. 2967.07 three times in connection with the APA’s role in the pardon application process. This indicates the mandatory nature of the APA investigation and of the entire APA involvement in the application process.
We hold that R.C. 2967.07 mandates that the APA investigation report and recommendation must be presented to the Governor before he may grant a pardon. This mandate includes those situations in which the Governor initiates the APA investigation.
The requirement of APA involvement by the General Assembly is permissible, because it is within the General Assembly’s authority to “legislate in aid of the [pardoning] power.” Knapp, 39 Ohio St. at 392-393. The statute is meant to ensure that information about each person for whom a pardon is considered will be available to the Governor, so that an informed decision may be made. This is precisely the type of regulation “as to the manner of applying for pardons” contemplated by Section 11, Article III. The Governor’s power to grant pardons is subject to this procedural mechanism, which requires the APA to investigate, recommend and report before the Governor may grant a pardon.
Because the Governor has ultimate substantive discretion whether to grant or deny a pardon, there is no requirement that the Governor place any weight whatsoever on either the investigative report or the recommendation of the APA. However, the power to disregard is not equivalent to the power to proceed without the procedural requirements first being fulfilled. The abuses sought to be remedied by addition of the “subject to” clause in Section 11, Article III are those that occur during the application process. Thus, the process is subject to regulation, and procedural requirements may be placed on the Governor’s power to pardon. To find otherwise would be to read the “subject to” clause out of Section 11, Article III, when it is clear that that clause affects the power of the Governor to grant pardons.
Defendants argue that if R.C. 2967.07 regulates in a way which affects the Governor’s power to pardon, then the statute is unconstitutional. However, the regulations placed on the pardoning power are those authorized by the Constitution itself. See Knapp, 39 Ohio St. at 392. Since R.C. 2967.07 was enacted *526 pursuant to the authority of Section 11, Article III, the statute is constitutional to the extent that it regulates the application process for pardons.
We recognize that the pardoning power conferred on the Governor by the Ohio Constitution is essential to ensure justice in particular cases. Indeed, as Alexander Hamilton stated in The Federalist No. 74 (Cooke Ed.1961) 500-501, in support of the broad clemency power conferred on the President by Section 2, Article II of the United States Constitution: “Humanity and good policy conspire to dictate, that the benign prerogative of pardoning should be as little as possible fettered or embarrassed. The criminal code of every country partakes so much of necessary severity, that without an easy access to exceptions in favor of unfortunate guilt, justice would wear a countenance too sanguinary and cruel.”
However, the power to pardon is subject to abuse. The framers therefore authorized the Ohio General Assembly to enact regulations to limit those abuses, thereby allowing procedural requirements which limit the Governor’s exercise of the power. In R.C. Chapter 2967, the General Assembly has enacted the authorized regulations as safeguards against abuse. Those safeguards do not stand in the way of the Governor’s substantive exercise of the pardoning power. It would take an amendment to Ohio’s Constitution to authorize substantive limitations. Nevertheless, the safeguards do impose procedural requirements which were bypassed in this case. The pardon purportedly granted was invalid from the outset.
Amicus curiae, American Civil Liberties Union of Ohio Foundation argues that if this court reverses the decision of the .court of appeals, the cause should be remanded to the court of appeals to resolve issues that court did not reach in its previous opinion. However, we have determined, as a matter of law, that former Governor Celeste acted outside the scope of his constitutionally conferred clemency authority in granting the pardon. The other assignments of error raised in the court of appeals cannot alter that finding. The judgment of the court of appeals in case No. 93-1165 is affirmed with respect to the commutations and reversed as to the pardon. The declaratory judgment of the trial court that the pardon is invalid is reinstated.
IV
Case No. 92-1350
In case No. 92-1350, the defendants in case No. 93-1165 appeal from the court of appeals’ denial of their complaint for a writ of prohibition. Defendants contend that the court of appeals erred in refusing to stop the trial court from exercising jurisdiction in the declaratory judgment action, which is the subject of the appeal in case No. 93-1165. We find that our resolution of the issues in ease No. 93-1165 is determinative of the issues raised in this appeal, and that any *527 remaining issues therefore are moot. Accordingly, we affirm the judgment of the • court of appeals in case No. 92-1350.

Judgment affirmed in case No. 92-1350.

Judgment affirmed in part and reversed in part in case No. 93-1165.

A.W. Sweeney, Wright and Evans, JJ., concur.
Moyer, C.J., concurs separately.
Douglas, Resnick and F.E. Sweeney, JJ., concur in part and dissent in part.
John R. Evans, J., of the Third Appellate District, sitting for Pfeifer, J.

. Even though courts may not review the substantive decision of the Governor on whether to exercise clemency in a particular case, courts may consider whether constitutionally authorized limitations on the clemency power have been respected. For example, if a Governor attempted to grant a pardon before the recipient had been convicted, the purported grant would be outside the scope of the clemency power conferred by Section 11, Article III and constitutionally invalid from the outset. Similarly, a purported pardon is not really a pardon at all if constitutionally authorized procedural limitations on the pardoning power are ignored. Knapp held that a pardon, once granted and delivered, is irrevocable. Id., 39 Ohio St. 377, syllabus. However, Knapp did not consider the issue of constitutional limitations on the Governor’s power. An attempted pardon that is granted without adherence to constitutionally authorized requirements is invalid and is not immune to challenge.

. Interpreting the “subject to” clause as authorizing the General Assembly to set up a regulatory scheme which includes prerequisites to the exercise of the Governor's pardoning power is consistent with our earlier analysis where we found that the clemency power is subject to whatever limits are set forth in Section 11, Article III. In the case of the “subject to” clause, the limit takes the form of an authorization to the General Assembly to issue regulations that will themselves limit the Governor’s pardoning power.

. Though the validity of a reprieve is not at issue in this case, we believe that any interpretation of the “subject to” clause is necessarily incomplete without considering each of the three types of executive clemency. In terms of reprieves, we believe that they are fundamentally different from pardons. A reprieve is temporary; execution of a sentence is delayed when the Governor grants a reprieve. A reprieve is not permanent in the way that a pardon is. Reprieves, by their very nature, often require prompt, totally unfettered action by the Governor. Consequently, we find that reprieves are not governed by the “subject to” clause and, consistent with our analysis below, the General Assembly may not regulate the application process for reprieves.