OPINION
{¶ 1} This case is before us on the appeal of David L. Wyse, Trustee, from a trial court judgment in favor of Ameritech Corporation (Ameritech). Wyse raises the following assignments of error in support of the appeal:
 {¶ 2} "I. The trial court erred as a matter of law by dismissing the First Claim for Relief for breach of contract.
 {¶ 3} "II. The trial court erred as a matter of law by dismissing the Second Claim for Relief for equitable estoppel.
 {¶ 4} "III. The trial court erred as a matter of law by dismissing the Third Claim for Relief for trespass.
 {¶ 5} "IV. The trial court erred by entering judgment against Wyse on the Fourth Claim for Relief for fraud.
 {¶ 6} "V. The trial court erred by entering judgment against Wyse on the Fifth Claim for Relief for mutual mistake."
 {¶ 7} After reviewing the evidence and applicable law, we find that the fifth assignment of error has merit and should be sustained. Because this holding disposes of the appeal, assignments of error one through four are moot and need not be addressed. An explanation of our decision follows.
 I {¶ 8} Many years ago, around 1983, Ameritech installed a controlled environmental vault (CEV) at the corner of Poe Avenue and Wyse Road. Ameritech uses CEVs to provide services to its customers in a particular geographic area. A CEV consists of a vault, a collar or riser, and a hatch. The vault is typically buried underground and contains electronic equipment that supplies the services. Connected to the vault is a collar, which is cement, and is normally visible only about six to nine inches above the ground. The hatch is metal, sits above the collar, and is entirely visible above ground. A heating and air conditioning unit is located in the hatch and is used to maintain the proper environment for the equipment in the vault.
 {¶ 9} Because construction was proposed for Interstates 70 and 75, the State of Ohio told Ameritech in 1998 that it would have to move or replace the Wyse Road CEV. As a result, Ameritech contacted Wyse in 1999 to obtain an easement on property Wyse owned in the area of Wyse Road and Sand Lake Road. The property in question contained a two acre lake, with a fountain. The existing master plan for the property suggested a hotel and restaurants on the Interstate 75 frontage, office buildings to the south, and office warehouse-type usage to the east.
 {¶ 10} At the time Wyse was contacted, Ameritech used right-of-way agents to acquire easements. These agents were not Ameritech employees, but were employed by separate companies. The first agent to contact Wyse was Loretta Williamson, who was employed by a company called ADC Information Technology. Williamson did not obtain an easement, and the assignment was given to another contractor (Fishel). Fishel's employee, Stephen Brookover, then contacted David Wyse in November, 1999.
 {¶ 11} When Brookover and Wyse discussed the easement, Wyse asked what size the CEV would be. Wyse was concerned about the size because the CEV was going to be placed by a lake that was the centerpiece of an industrial development that Wyse's father had started. Wyse wanted to make sure that the CEV would not be obtrusive. Ameritech acknowledged at trial that this type of request from a landowner is not unusual.
 {¶ 12} Brookover conveyed Wyse's question to James Morgan, who was employed by Ameritech as a loop capacity planner. To answer the question, Morgan first looked at Ameritech's manuals. When he did not find an answer there, he measured several other CEVs in the area. Subsequently, Morgan told Brookover that the CEV hatch would stick two and a half to three feet out of the ground. Brookover conveyed this information to Wyse. Brookover agreed with Wyse that the CEV would be out of the ground to the same extent as the existing CEV at the corner of Poe Avenue and Wyse Road. The same day this conversation occurred, Wyse agreed to the easement. At the time the easement was executed, both Ameritech and Wyse expected the CEV to conform to the description Wyse received.
 {¶ 13} When Wyse signed the easement agreement in December, 1999, he also crossed out language allowing Ameritech to use the easement to construct poles, guys and anchors. Wyse explained to Brookover that he was omitting this language because he did not want anything to obstruct the view of the lake. Brookover also testified that the items were omitted because Wyse did not want anything of that type. The non-exclusive easement that was signed stated that:
 {¶ 14} "[f]or a valuable consideration of one dollar ($1.00), receipt of which is hereby acknowledged, the undersigned (Grantor) David L. Wyse, TR hereby grants and conveys to Ohio Bell Telephone Company a.k.a. Ameritech Ohio Inc, an Ohio Corporation and its affiliates and licensees, successors and assigns (collectively "Grantees") a non-exclusive easement in, under, and across the Easement Area (described below), for the purposes of and in order to construct, reconstruct, modify, supplement, maintain, operate and/or remove facilities for the transmission of signals used in the provision of communication, video and/or information services and/or any other services or uses for which such facilities may be used, including but not limited to messenger strand, equipment cabinets or enclosures and support posts or pads, cables, wires, pedestals, or other above-ground cable or wire enclosures, marker posts, and signs, and other related or useful equipment, fixtures, appurtenances and facilities, together with the right to have commercial electrical service extended across the Property (described below) and Easement Area to provide service to such facilities and the right of ingress and egress across the Property and the Easement Area for the purpose of access to and use of the easement granted herein."
 {¶ 15} Because of problems with road right-of-way acquisition, Ameritech did not install the CEV until November, 2001. In the meantime, Ameritech began using what was called a new generation CEV (NG CEV), which involved a redesign of the hatch for power and greater heating or air-conditioning capacity. The redesign was intended to accommodate newer technology and electronics that needed greater cooling capacity. At the time the easement was signed, no one at Ameritech knew that a new generation CEV was being planned.
 {¶ 16} Paul Barnett, an Ameritech loop long-range planner, decided in early 2001 that the hatch on the Sand Lake CEV would be the NG CEV. Barnett made this decision because Sand Lake was a business area and because Ameritech had a company-wide initiative regarding a new service offering (digital subscriber service). The new hatch was about eight inches higher than the old hatch, was 22 inches wider, and was about 26 inches longer than the old design. A higher riser (36 inches as opposed to 27 inches) was also used, because of possible water problems from the lake. And finally, Fishel added about eighteen inches of fill dirt to the design prints, because it assumed the State would change the grade of the area around the CEV. However, the construction limits of the State project were to the east and did not directly affect the final grade of the area surrounding the CEV.
 {¶ 17} The end result was that the CEV stood about 54 inches above ground level, rather than a maximum of 36 inches. Wyse was unhappy with the result, and called Ameritech. When discussions proved fruitless, Wyse filed the present lawsuit. After the lawsuit was filed, Ameritech installed a block wall around the CEV, so that only the hatch area showed above the block wall. However, the height of the structure, including the wall, remained the same, in terms of affecting visibility. Ameritech also added a wire fence. Pictures of the CEV as it currently appears (Defendant's Ex. D and Ex. F) reveal a quite unappealing structure.
 {¶ 18} In the original complaint, Wyse made claims for: (1) reformation or construction of the easement consistent with the representations that induced Wyse to sign the easement; (2) estoppel; (3) trespass; and (4) fraudulent inducement. The trial court granted a Civ. R. 12(B)(6) to dismiss the first three claims, because it found that the easement terms were clear and unambiguous and could not be altered by parol evidence. However, the court did allow the claim for fraudulent inducement to proceed.
 {¶ 19} Subsequently, Wyse filed an amended complaint, adding a fifth claim based on mutual mistake. The court then held a bench trial on the two remaining claims, and issued a decision in Ameritech's favor. The court first rejected the fraud claim because Wyse failed to prove that Ameritech made false representations or acted with reckless disregard of whether the representations were false. In addition, the court concluded that Ameritech did not intend to deceive Wyse.
 {¶ 20} Concerning the claim for mutual mistake, the court found insufficient evidence that the intentions of the parties were frustrated. In this regard, the court focused on the fact that Ameritech's intention was to obtain an easement to build a new CEV, which it was successful in doing. The court further decided that Wyse's intention was "to agree on a location for an easement, to grant the easement, and for the the (sic) Defendant (sic) install fiber optic cables in his building and to give the Plaintiff a certain amount of money for landscaping." Although the court's comments are not completely clear, the court appears to have concluded that neither of the parties' "intentions was frustrated merely because the Second Vault was larger than the Plaintiff had expected or wanted." Finally, the court commented that:
 {¶ 21} "the size of the Second Vault was not material to the transaction. Though it may have been a material consideration in the Plaintiff's decision to grant the easement, the size of the Second Vault was not material to the transaction. The size or location of the easement might have been material to the transaction; however, the size of the structure located on the easement was not material."
 {¶ 22} As we said, Wyse challenges five aspects of the court's decision, ranging from the court's decision on the motion to dismiss the first three claims for relief, to the court's ultimate decision on the merits. However, because the fifth assignment of error disposes of the appeal, we need not address the first four assignments of error.
 {¶ 23} In the fifth assignment of error, Wyse claims that the trial court erred in entering judgment for Ameritech on the fifth claim for relief, which was based on mutual mistake. According to Wyse, the trial court's legal analysis of this claim was incorrect because the court improperly distinguished between representations that are material to the inducement of an easement and those that are material to the easement itself. Wyse contends that such legal distinctions do not exist, i.e., Wyse claims that if a fact was material in inducing Wyse to sign the easement, it was material to the easement itself.
 {¶ 24} We agree that the trial court applied an incorrect legal analysis. In Reilley v. Richards, 69 Ohio St.3d 352,1994-Ohio-528, the Ohio Supreme Court held that recission is permitted in real estate transactions where:
 {¶ 25} "there is a mutual mistake as to a material part of the contract and where the complaining party is not negligent in failing to discover the mistake. A mistake is material to a contract when it is `a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances.' Thus, the intention of the parties must have been frustrated by the mutual mistake." Id. at 352-53, quoting 1 Restatement of the Law 2d, Contracts (1981) 385, Mistake, Section 152(1).
 {¶ 26} The trial court's comments in the present case indicate that the court interpreted the "intentions of the parties" too narrowly. Specifically, the court felt that so long as Ameritech accomplished its purpose in obtaining an easement, i.e., building a CEV, any mistake was irrelevant. However, an examination of Reilley indicates that this is incorrect.
 {¶ 27} In Reilley, the parties signed a real estate purchase contract for property that bordered a stream. The purchaser intended to use the property to build a family home. However, after closing, the purchaser discovered that part of the property was located in a flood hazard area. Because of this, the purchaser's builder said he would not build on the property because he could not warrant the property for one year, consistent with standard building practice. Id. at 353. Neither party knew before closing that the property was in a flood hazard area.
 {¶ 28} Ultimately, the seller brought suit on the real estate contract, and the purchaser counterclaimed for recission of the contract. Id. The trial court granted recission, and the court of appeals reversed. On further appeal, however, the Ohio Supreme Court found that recission was properly granted. In this regard, the court noted that:
 {¶ 29} "the lack of knowledge that a significant portion of the lot is located in a floodway is a mistake of fact of both parties that goes to the character of the property such that it severely frustrates the appellant's ability to build a home on the property. Thus, it is a mutual mistake of fact that is material to the subject matter of the contract." Id. at 353.
 {¶ 30} In Reilley, the seller's intention was to sell the property, which he was successful at doing. If the Ohio Supreme Court had followed the logic of the trial court in the present case, it would have affirmed the judgment in the seller's favor, since the seller's intentions were not frustrated. However, that is not what the court did. Instead, the court considered the subject matter of the contract, and found the mistake material to the subject matter because it severely frustrated the expectations of one party to the agreement. Another way of putting this is that the parties entered into the contract for the purchase of real property knowing that one party intended to build a home on the site, even though the intention was not expressed in the agreement. When the intention could not be accomplished due to the mutual mistake, the contract was rescinded.
 {¶ 31} In the present case, the parties entered into a non-exclusive easement agreement, and both sides clearly understood that the purpose of the easement was for construction of a CEV. In fact, the easement itself states that it is for construction of "facilities for the transmission of signals used in the provision of communication, video and/or information services." The parties entered into this agreement under a mistaken understanding of what the visibility and height of the CEV would be when it was installed. This mistake was not particularly material to Ameritech's intention, any more than the state of the property was to the seller in Reilley. However, the mistake was material to the subject matter of the contact, since it severely frustrated Wyse's expectations.
 {¶ 32} In this regard, Wyse's expectation was not just that he would receive installation of fiber optic cable and landscaping in the amount of $500. His expectation also was that the installed CEV would be consistent in height and appearance with Ameritech's representations. When that did not occur, the mistake was material to the subject matter of the contract.Reilley, 69 Ohio St.3d at 353. See also, Patel v. Larkin
(Dec. 28, 1999), Tuscarawas App. No. AP 01 0005, 2000 WL 94498, *5 (in action to rescind real estate contract, buyer sufficiently alleged for purposes of asserting mutual mistake, that: "(1) both parties thought the land was buildable at the time of the contract, and 2) the land was unbuildable at the time of the contract." The court ultimately did reject the buyer's action to rescind because the buyer failed to establish that the land was actually unsuitable for building).
 {¶ 33} Similarly, in Reitz v. West (Aug. 30, 2000), Summit App. No. 19865, 2000 WL 1226617, the parties entered into a real estate contract under the mistaken impression that the property in question had city sewer access. Eventually, the buyer found out that the property did not have access and informed the seller that he would not complete the purchase (which had not immediately closed, but was scheduled to close at the same time as an adjacent property). Id. at *1. When the seller later brought an action for specific performance, the buyer counterclaimed for recission of the contract. Id. However, the trial court dismissed the counterclaim and granted specific performance. Id. at *2.
 {¶ 34} On appeal, the Ninth District Court of Appeals considered whether the buyer was entitled to be excused from performance due to mutual mistake. Id. at *4. The seller argued that the contract language did not make the sale contingent on access to city sewer. In this regard, the seller argued that the buyer's disagreement was based on his belief that the contract omitted a material term, whereas she believed the contract was a complete expression of the agreement.
 {¶ 35} The buyer's argument, however, was not that material terms were omitted from the contract. Instead, the buyer argued that "both parties entered into the contract on the mutual and mistaken belief that the lot was served by the city sewer." Id. at *5. In dismissing the counterclaim, the trial court refused to consider the extrinsic evidence on this point. The Ninth District held the trial court erred in refusing to consider the evidence, because "the presence of a mutual mistake of fact calls into question the very existence of the contract." Id. at *6. Accordingly, the Ninth District reversed the dismissal of the counterclaim and remanded the case for further hearing, due to the factual issues, i.e., the seller had denied telling the buyer that the property had sewer access.
 {¶ 36} In the present case, there is no dispute that both Ameritech and Wyse operated under a mistake of fact about the visibility of the CEV and the height it would protrude above the ground. Furthermore, no evidence was submitted to indicate that Wyse was negligent. Specifically, under Reilley, the complaining party "must also not be negligent in failing to discover the mistake." 69 Ohio St.3d at 353. Rather than being negligent, Wyse did all that could be expected of a property owner, when he sought and received assurances from Ameritech about the appearance and height of equipment the company intended to install. Consequently, the trial court should have granted recission, based on the facts and applicable law.
 {¶ 37} In light of the preceding analysis, the fifth assignment of error has merit and is sustained. As we mentioned, this decision moots the remaining four assignments of error, and they will not be considered. Accordingly, assignments of error one through four are overruled as moot, and the fifth assignment of error is sustained. The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.
Grady, J., and Young, J., concur.