OPINION
Daniel J. Rhodes ("appellant") appeals the May 22, 2000 judgment entry of sentence by the Lake County Court of Common Pleas. Appellant was convicted of aggravated vehicular assault, driving while under the influence of alcohol, and driving with a prohibited concentration of alcohol in bodily substances. For the following reasons, we affirm the judgment of the lower court.
On March 20, 1999, at approximately 10:42 p.m., on State Route 6 in Willoughby Hills, Ohio, appellant, twenty-six (26) years old, drove his 1989 Ford Mustang into the rear of Karen Manfroni's 1987 Chevrolet Caprice Classic, causing her vehicle to be wrapped around a telephone pole. Appellant and a passenger, Eric Vasilko, sustained minor injuries. Ms. Manfroni sustained very severe injuries.
On May 14, 1999, appellant was indicted on three counts: aggravated vehicular assault, a felony of the fourth degree, in violation of R.C.2903.08, with specifications that he was under the influence of alcohol and that he was previously convicted of driving while under the influence of alcohol on July 25, 1996; driving while under the influence of alcohol or drugs, a misdemeanor of the first degree, in violation R.C.4511.19(A)(1); and driving with a prohibited concentration of alcohol in bodily substances, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(2).
On April 11, 2000, a jury trial commenced. Thereafter, on April 13, 2000, the jury returned a verdict of guilty as to all three counts. The trial court filed a judgment entry on April 19, 2000, reflecting the jury verdict. Subsequently, a sentencing hearing was held on May 17, 2000. A judgment entry of sentence was filed on May 22, 2000, sentencing appellant to eighteen (18) months in prison for count one. Appellant was also sentenced to a six-month prison term for counts two and three, which merged for purposes of sentencing. The sentences were ordered to run concurrently. The trial court ordered the permanent revocation of appellant's driver's license and a three hundred dollar ($300) mandatory fine.[1]
On June 9, 2000, appellant filed a timely notice of appeal, asserting six assignments of error. Appellant's assignments of error will be set out as each one is discussed. We begin with appellant's first assignment of error:
 "[1.] The trial court erred when it permitted Patrolman Anderson, an officer trained in accident investigation, to testify as to his opinion of how the accident occurred and the speed that appellant's vehicle was traveling."
 In appellant's first assignment of error, appellant contends that the trial court erred when it permitted Patrolman Anderson to give an opinion as to the cause of the accident and the speed of his vehicle without being qualified to testify as an accident reconstruction expert. Appellant avers that the requirements of Evid.R. 702(B) and (C) were not satisfied. Appellant also challenges the methods used by Patrolman Anderson
in compiling his estimate of the minimum speed because he had difficulties applying the formula and there was no evidence as to the reliability of that formula.
Prior to the introduction of expert testimony, a trial court must make a threshold determination as to the qualifications of a person testifying as an expert under Evid.R. 104(A). Scott v. Yates (1994),71 Ohio St.3d 219, 221. A trial court's ruling as to the admission or exclusion of expert testimony is within its broad discretion and will not be disturbed absent an abuse of that discretion. State v. Tomlin
(1992), 63 Ohio St.3d 724, 728. An abuse of discretion is more than an error of law or judgment; rather, it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. State v. Bresson
(1990), 51 Ohio St.3d 123, 129. To qualify as an expert, the witness need not be the "best witness" on the particular subject in question.Yates at 221. However, expert testimony must assist the jury in determining a fact issue or understanding the evidence. State v. Boston
(1989), 46 Ohio St.3d 108, 118. It is also necessary to keep in mind that an expert witness qualified in one subject area may not be qualified to testify as an expert in a related subject. Campbell v. The DaimlerGroup, Inc. (1996), 115 Ohio App.3d 783, 793; see, also, Yates, supra.
A witness may testify as an expert if certain requirements are satisfied. First, the witness' testimony must relate to matters beyond the knowledge or experience possessed by lay persons or must dispel a common misconception among lay persons. Evid.R. 702(A). Second, the witness must be qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of his testimony. Evid.R. 702(B). Finally, the witness' testimony must be based on reliable, scientific, technical, or other specialized information. Evid.R. 702(C). When an expert witness' testimony includes the results of a test, experiment, or procedure, then the theory that it is based upon must be objectively verifiable, it must be conducted in a way that yields an accurate result, and the design must reliably implement the theory. Id. Under Evid.R. 702(C), a trial court's role focuses on whether the testimony is based upon scientifically valid principles, not whether the expert witness' conclusions are correct or persuasive. Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607, paragraph one of the syllabus.
Additionally, Evid. R. 703 provides that the facts or data upon which an expert witness bases his opinion or inference may be those perceived by him or admitted into evidence. Where an expert witness bases his opinion, in whole or in major part, on facts or data perceived by him, then Evid.R. 703 is satisfied. State v. Grant (July 21, 1993), Lake App. No. 92-L-037, unreported, 1993 Ohio App. LEXIS 3579, at 9-10, citingState v. Solomon (1991), 59 Ohio St.3d 124, 126.
In the case sub judice, the issue turns on whether Patrolman Craig Anderson's testimony, concerning the minimum speed of appellant's vehicle, satisfied the requirements of Evid.R. 702 and 703. In particular, appellant's arguments center around the requirements of Evid.R. 702(B) and (C).
Although Patrolman Anderson testified that he was an "accident investigator," not an "accident reconstructionist," his title is irrelevant to our determination. We must look to his qualifications, education, knowledge, and testimony. Upon review of the record, under Evid.R. 702(B), Patrolman Anderson is qualified by specialized knowledge, skill, experience, training, and education to testify as an expert on the subject matter of the minimum speed of appellant's vehicle before impact. Specifically, Patrolman Anderson stated that his basic training as a police officer included twenty-two (22) hours of accident investigation; however, he also received an additional eighty (80) hours of accident investigation. Patrolman Anderson testified several times that part of the training that he received included calculating the minimum speed of a vehicle.
Under Evid.R. 702(C), Patrolman Anderson proceeded to explain the variables that are used in the formula to determine the minimum speed of a vehicle before impact. He stated that the longest skid mark by appellant's left rear tire, one hundred ninety-five (195) feet, the radius of the "yaw marks" left by appellant's vehicle, and the "drag factor" of the roadway were plugged into the formula.[2] Using a board, Patrolman Anderson demonstrated how he plugged the numbers into the formula. He explained how he calculated appellant's minimum speed using a calculator. Patrolman Anderson testified that his calculation revealed a minimum speed of sixty-two m.p.h. for appellant's vehicle before impact. As to Patrolman Anderson's misstatement between the words "radius" and "circumference," such was a credibility and weight issue for the jury. The weight to be given to the evidence and the witnesses' credibility are primarily for the jury to decide. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
Additionally, as to appellant's argument concerning Patrolman Anderson's reliance on the Northwest Institute chart, which was not admitted into evidence, Patrolman Anderson testified that the information that he used to find the corresponding number on the chart was based solely upon data that he gathered. In particular, Patrolman Anderson explained that the "drag factor," the coefficient of friction, was obtained by collecting information about the roadway. He testified that, using the information that he collected, he found the corresponding drag factor number on a chart that was supplied to him during his training. Patrolman Anderson further testified that his opinion as to the minimum speed of appellant's vehicle before impact was based solely upon facts or data from his own investigation, measurements, experience, and training. Satisfying Evid.R. 703, Patrolman Anderson's expert opinion was based, in whole or in major part, on facts or data perceived by him.
Further, appellant cites to Yates, supra, 71 Ohio St.3d 219, where the Supreme Court of Ohio held that Deputy Hawkins, an accident investigator, testified beyond his scope of expertise and was not qualified to give an opinion on causation. Yates at 221. The court stated that Deputy Hawkins, who attended the police academy and spent approximately two weeks on accident investigation, did not know the formula for calculating the speed of motor vehicles or what effect speed would have upon the post-impact course of vehicles. Id. However, unlike Yates, Patrolman Anderson's training included an additional eighty hours and training in calculating the minimum speed of vehicles prior to impact using a formula that took into account skid marks, yaw marks, and the drag factor.
Moreover, as a precautionary measure, during the jury instruction, the trial court instructed the jury that they decide what weight should be given to expert witnesses' testimony by considering the expert's skill, experience, training, and knowledge. Further, as a result of appellant's objections, the court was aware of appellant's concerns. Appellant also had the opportunity to extensively cross-examine Patrolman Anderson. We cannot say that the trial court abused its discretion by admitting the expert testimony of Patrolman Anderson.
Even assuming arguendo that the trial court erred in admitting Patrolman Anderson's testimony as to the minimum speed of appellant's vehicle before impact, such would not constitute reversible error. Harmless error is that error which does not affect a substantial right. Crim.R. 52(A). "Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus. In the instant case, as will be explained in appellant's remaining assignments of error, additional evidence exists to support appellant's convictions. Therefore, error in admitting the testimony of Patrolman Anderson as to the minimum speed of appellant's vehicle before impact would constitute harmless error. Appellant's first assignment of error is without merit.
Next, we address appellant's second assignment of error:
 "[2.] The Trial Court erred, to the prejudice of appellant, when it permitted the State to read a prior statement of one of its witnesses into the record."
 In appellant's second assignment of error, appellant argues the trial court erred when it allowed Laura Novotney to read her prior statement. Appellant asserts that Ms. Novotney only had trouble remembering one aspect. Appellant claims that the statement that was read offered no insight into answering the question that was asked prior to having her recollection refreshed.
Upon being asked what happened next, Ms. Novotney responded, "I can't remember if I saw headlights or if I heard a whistling sound. * * * I can't remember what happened first. * * * " The prosecutor then asked Ms. Novotney if she saw a second set of headlights at some point. Ms. Novotney responded, "I can't answer that." Thereafter, the prosecutor asked Ms. Novotney that, if she had the opportunity to review her March 20, 1999 police statement, would it help refresh her memory. Ms. Novotney responded in the affirmative and proceeded to review her statement. Subsequently, the following exchange occurred:
 "[Prosecutor] Does reviewing the statement help refresh your memory to what you observed occurred that particular evening?
"[Laura Novotney] Yes.
 "[The court] Now, does it refresh your memory or are you relying on that document as to what it says?
 "[Laura Novotney] Probably yes. Yes. Relying on the document.
 "[The court] It does not refresh your memory; correct?
"[Laura Novotney] Correct.
"[The court] Then it is past recollection recorded."
 Upon laying a foundation as to Ms. Novotney's police statement, the prosecutor asked the court to read the statement to the jury. Appellant raised an objection, stating that he objected "[a]s to the reading." The trial court then asked appellant if he objected if the witness read the statement. Appellant responded, "[T]hat's fine." Ms. Novotney proceeded to read her March 20, 1999 police statement to the jury.
The initial issue at hand is appellant's failure to preserve his argument for appeal. Although appellant objected "as to the reading," the subsequent colloquy with the trial court shows that appellant's objection was directed to the individual who would read the statement. Once it was stated that Ms. Novotney would read her statement, appellant responded "[t]hat's fine," demonstrating a withdrawal of his objection.
Generally, an appellate court will not consider an "error" which could have been called to the attention of the trial court by way of an objection at the time when such "error" could have been avoided or corrected. State v. Campbell (1994), 69 Ohio St.3d 38, 40-41. Such "errors" are waived on appeal. However, plain errors or defects affecting substantial rights may be noticed by an appellate court although they were not brought to the attention of the trial court. Crim.R. 52(B). Notice of plain error is to be applied with utmost caution and is invoked only under rare and exceptional circumstances to prevent a manifest miscarriage of justice. State v. D'Ambrosio (1995),73 Ohio St.3d 141, 144. Plain error does not exist unless, but for the error, the outcome of the trial would have been different. State v.Coleman (1999), 85 Ohio St.3d 129, 141.
In the case before us, we do not find any plain error or defect affecting appellant's substantial rights when Ms. Novotney read her March 20, 1999 police statement to the jury. Evid.R. 803(5) provides that a writing, concerning a matter about which a witness once had knowledge, but now has insufficient recollection to enable him to testify fully and accurately, may be read into evidence, assuming a proper foundation is laid. In laying a proper foundation, the witness must testify that, among other things, the writing does not refresh his or her independent recollection. Staff Notes Evid.R. 803(5). Appellant's second assignment of error is without merit.
Appellant's third assignment of error is as follows:
 "[3.] The trial court erred in admitting the results of a blood test conducted on appellant because the prosecution failed to establish a chain of custody."
 In appellant's third assignment of error, appellant asserts that the trial court erred in admitting the results of the blood sample because one witness testified that she had no idea how long the blood sample was without refrigeration. Appellant contends the state failed to provide a proper chain of custody.
The admission or exclusion of evidence rests within the sound discretion of a trial court. State v. Robb (2000), 88 Ohio St.3d 59,69, citing State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus; see, also, Evid.R. 104(A). An appellate court will not disturb the ruling of a trial court as to the admission or exclusion of evidence absent an abuse of discretion and a showing that the appellant has suffered material prejudice. State v. Martin (1985), 19 Ohio St.3d 122,129.
 The chain of custody of a piece of evidence is part of the authentication and identification requirement of Evid.R. 901. The state maintains the burden of establishing the chain of custody of a piece of evidence. State v. Brown (1995), 107 Ohio App.3d 194, 200, citing State v. Barzacchini (1994), 96 Ohio App.3d 440, 457-458. However, the prosecution's burden is not absolute since "the state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur." State v. Blevins (1987), 36 Ohio App.3d 147, 150. Moreover, even when a break in the chain of custody is uncovered, such goes to the credibility of the evidence and not its admissibility. State v. Burrier (June 16, 2000), Geauga App. No. 98-G-2126, unreported, 2000 Ohio App. LEXIS 2665, at 23, citing Blevins, supra, at 150; State v. Mays (1995), 108 Ohio App.3d 598; Barzacchini, supra, 96 Ohio App.3d at 458.
In the case before us, Laura Skufka, a registered nurse at Lake West Hospital, testified that she drew appellant's blood at 12:34 a.m., on March 21, 1999. In the presence of appellant and Patrolman Anderson, Ms. Skufka testified that she sealed the test tubes by placing stickers on the top of the test tubes, which she and appellant initialed. She further testified that, in the presence of appellant and Patrolman Anderson, she placed the sealed test tubes in a bag and then in the kit, sealing it with a yellow sticker that she initialed. She stated that the sealed kit along with the chain of custody checklist was handed to Patrolman Anderson. She testified that appellant was discharged at 12:50 a.m., March 21, 1999.
Patrolman Anderson testified that he maintained possession of the sealed kit as he was transporting appellant to the police department after appellant was discharged. Patrolman Anderson stated that, upon arriving at the police station, at approximately 1:00 a.m., he immediately placed the kit in the refrigerator. Thereafter, Patrolman Anderson stated that the sealed kit was taken to the crime lab for analysis.
Lauren Vinsick, a chemist/toxicologist at Lake County Regional Forensics Lab, testified that the sealed kit was checked in on March 22, 1999, at 1:25 p.m. by Detective Broadwater of the Willoughby Hills Police Department. She stated that the kit was placed in the refrigerator. Ms. Vinsick explained that if blood is not refrigerated, then it breaks down and separates. On March 24, 1999, at 8:00 a.m., Ms. Vinsick stated that she retrieved the kit from the refrigerator. She testified that she opened the sealed kit and analyzed the blood, which did not appear separated or fermented. Upon analyzing appellant's blood, she stated that the blood alcohol was .21 grams percent by weight, exceeding the legal limit of .10 grams percent.
Taken as a whole, the testimony of Ms. Skufka, Patrolman Anderson, and Ms. Vinsick shows to a reasonable certainty that no tampering or substitution occurred with the blood kit. It is not necessary for the prosecution to present every single witness that handles a piece of evidence. As stated, even when a break in the chain of custody is uncovered, such goes to the credibility of the evidence and not its admissibility. Appellant's third assignment of error is meritless.
Next, we address the merits of appellant's fourth assignment of error:
 "[4.] Former R.C. 2903.08, requiring a mandatory permanent license revocation, is a violation of the Eighth Amendment and Section 9, Article I of the Ohio Constitution as applied to this case."
 In appellant's fourth assignment of error, appellant contends that former R.C. 2903.08, requiring a mandatory permanent driver's license revocation, is cruel and unusual punishment. Appellant argues that, as a man in his twenties who works as a furniture mover, he faces punishment for the rest of his life. Appellant posits that such a sentence affects not only his ability to drive, but also his ability to earn a living for himself and his family in his chosen profession. Appellant further asserts that R.C. 2903.08 has since been modified where an offender's driver's license is suspended for a definite period of two to ten years.
Former R.C. 2903.08 is applicable to the instant case. Appellant was charged with aggravated vehicular assault, a fourth degree felony. Former R.C. 2903.08 provides that if a defendant is found to be under the influence of alcohol at the time of the offense, a trial court is required to permanently revoke the defendant's driver's license. Under current R.C. 2903.08, aggravated vehicular assault, effective March 23, 2000, appellant would be charged with a felony of the second degree. However, current R.C. 2903.08 allows a trial court to suspend an offender's driver's license for a definite period of two to ten years.
At the time of the offense, former R.C. 2903.08 was in effect. The reenactment, amendment, or repeal of a statute does not affect the prior operation of the statute, any prior action taken under it, any violation, or any penalty, forfeiture, or punishment incurred prior to the amendment or repeal. R.C. 1.58(A)(1) and (A)(3). The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." See, also, Section 9, Article I of the Ohio Constitution. In addition to protecting individuals from punishment such as torture, theEighth Amendment has been invoked to prohibit punishment that is disproportionate to the crime committed. State v. Weitbrecht (1999),86 Ohio St.3d 368, 370. Eighth Amendment violations are rare and instances of cruel and unusual punishment are limited to those punishments, which, under the circumstances, would be considered shocking to any reasonable person. Id., citing McDougle v. Maxwell (1964),1 Ohio St.2d 68, 70. The punishment must be so greatly disproportionate to the offense that it shocks the sense of justice of the community.Id., citing McDougle.
It is important to note that all legislative enactments enjoy a strong presumption of constitutionality. Weitbrecht, supra,86 Ohio St.3d at 370. Any reasonable doubt as to the constitutionality of a statute must be resolved in favor of the General Assembly's power to enact the statute. State v. McDonald (1987), 31 Ohio St.3d 47, 48. The General Assembly has plenary power to prescribe crimes and fix penalties. Statev. Strailey (Sept. 25, 1998), Lake App. No. 97-L-227, 1998 Ohio App. LEXIS 4524, citing State v. Morris (1978), 55 Ohio St.2d 101, 112. The party asserting the unconstitutionality of a statute must prove this assertion beyond a reasonable doubt. State v. Thompkins (1996),75 Ohio St.3d 558, 560.
In State v. Fields (Nov. 29, 1993), Clermont App. No. CA93-04-025, unreported, 1993 Ohio App. LEXIS 5685, the Twelfth Appellate District addressed the issue of whether or not a mandatory lifetime suspension of a driver's license under R.C. 2903.06, aggravated vehicular homicide, constituted cruel and unusual punishment. In Fields, the defendant was found to be under the influence of alcohol at the time of the offense; thus, R.C. 2903.06 provided for a mandatory lifetime suspension of his driver's license. Id. The Twelfth District stated that a punishment does not violate the constitutional prohibition against cruel and unusual punishment unless it is so greatly disproportionate to the offense that it shocks the sense of justice of the community. Fields at 5, citing Statev. Chaffin (1972), 30 Ohio St.2d 13, 17. The appellate court further stated that a sentence that is within the statutory limitations is not excessive and does not constitute cruel and unusual punishment. Id.,
citing State v. Juliano (1970), 24 Ohio St.2d 117, 120. In holding that a mandatory lifetime driver's license suspension did not constitute cruel and unusual punishment, the appellate court held that appellant's sentence did not support his claim that the sense of justice of the community had been shocked or that it was disproportionate to the crime.Id.
Additionally, although not a case challenging the constitutionality of the imposition of a mandatory driver's license revocation as cruel and unusual punishment under the Eight Amendment, this court held that the imposition of a lifetime driver's license revocation does not necessarily violate due process. State v. Fitzmaurice (Dec. 3, 1999), Lake App. No. 98-L-199, unreported, 1999 Ohio App. LEXIS 5780, citing State v. White
(1987), 29 Ohio St.3d 39, 42.
Following the sound logic of the Twelfth Appellate District in Fields,
the imposition of a mandatory lifetime revocation of appellant's driver's license under R.C. 2903.08 does not constitute cruel and unusual punishment. As stated, pursuant to R.C. 1.58(A), the amendment of a statute does not affect the prior operation of that statute, any prior action taken under it, any penalty, or any punishment incurred prior to the amendment. Further, appellant fails to overcome the strong presumption of the constitutionality of the permanent driver's license revocation under R.C. 2903.08. Appellant bore the heavy burden of demonstrating that the mandatory driver's license revocation of R.C.2903.08 violated the Eighth Amendment beyond a reasonable doubt. In attempting to satisfy his burden, appellant simply argues that a lifetime driver's license revocation unfairly punishes a young offender as opposed to an older offender and that the legislature has recently amended the punishment. Appellant's fourth assignment of error is without merit.
Appellant's fifth assignment of error is as follows:
 "[5.] Mr. Rhodes' convictions for aggravated vehicular assault and driving under the influence are against the sufficiency and/or weight of the evidence presented at trial."
 In appellant's fifth assignment of error, appellant argues both a sufficiency and manifest weight of the evidence argument as to his convictions of aggravated vehicular assault and driving while under the influence. Appellant contends that the prosecution has no case because Patrolman Anderson was not a qualified expert and that the blood sample lacked a chain of custody. Appellant asserts that he and Mr. Vasilko testified that he was not driving recklessly and did not have too much to drink. Appellant notes that the fact that he did not have too much to drink was bolstered by Nurse Skufka's observations when he arrived at the hospital.
A sufficiency of the evidence argument challenges whether the prosecution presented evidence for each element of the offense, allowing the matter to go to the jury, whereas a manifest weight of the evidence argument contests the believability of the evidence presented. State v.Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, 1994 Ohio App. LEXIS 5862, at 13. We begin with appellant's sufficiency of the evidence argument as to his convictions for aggravated vehicular assault and driving while under the influence of alcohol.
In order to preserve a sufficiency of the evidence challenge on appeal, a defendant must make a timely Crim.R. 29 motion for acquittal.State v. Barksdale (June 22, 2001), Lake App. No. 2000-L-088, unreported, 2001 Ohio App. LEXIS 2808, 3. A Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence. State v. Talley
(Sept. 25, 1998), Lake App. No. 97-L-169, unreported, 1998 Ohio App. LEXIS 4526. Any claim of error, concerning the denial of a Crim.R. 29 motion for acquittal is waived by the failure to renew the motion at the close of the evidence, unless the case is tried to the bench. State v.Miley (1996), 114 Ohio App.3d 738, 742; State v. Thomas (Oct. 11, 1996), Trumbull App. No. 95-T-5253, unreported, 1996 Ohio App. LEXIS 4545, at 6.
Upon review of the transcript, appellant did not preserve his sufficiency of the evidence argument for appeal. At the close of the prosecution's case in chief, appellant moved for a Crim.R. 29 motion for acquittal. When the trial court denied appellant's motion, appellant proceeded to present a defense. However, at the close of all the evidence, appellant failed to renew his Crim.R. 29 motion for acquittal.
Next, we address appellant's manifest weight of the evidence argument as to his convictions of aggravated vehicular assault and driving while under the influence of alcohol. Aggravated vehicular assault under R.C.2903.08 provides, in part:
 "(A) No person, while operating * * * a motor vehicle * * * shall recklessly cause serious physical harm to another person * * *.
 "(B) * * * When the trier of fact determines whether the offender was under the influence of alcohol[,] * * * a chemical test * * * may be considered as competent evidence and the offender shall be presumed to have been under the influence of alcohol if there was * * * a concentration of ten-hundredths of one percent or more by weight of alcohol in the offender's blood * * *."
 Driving while under the influence of alcohol, under R.C. 4511.19(A)(1) and (A)(2), provides, in part:
"(A) No person shall operate any vehicle * * * if * * *:
 "(1) The person is under the influence of alcohol * * *.
 "(2) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol in his blood."
 When making the determination as to whether a conviction is or is not against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility, and decide whether in resolving the conflicts in the evidence, the jury lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387; Schlee, supra, at 15, citing State v. Davis (1988), 49 Ohio App.3d 109, 113. Generally, the weight to be given to the evidence and the witnesses' credibility is primarily for the jury to decide. State v. Thomas (1982), 70 Ohio St.2d 79. The issue when reviewing a challenge to the manifest weight of the evidence is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v. Nields
(2001), 93 Ohio St.3d 6, 25, quoting State v. Getsy
(1998), 84 Ohio St.3d 180, 193-194. When reviewing a manifest weight of the evidence challenge, an appellate court sits as the "thirteenth juror." Thompkins, supra, at 387. The granting of a new trial is exercised only in exceptional cases where the evidence weighs heavily against a conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175.
In the instant case, Louis Gravino, a paramedic firefighter, testified that he detected an odor of alcoholic beverage on appellant and that appellant seemed a little sluggish upon being questioned. Eric Vasilko testified that he and appellant had a couple of vodka "screwdriver" drinks while they were installing a stereo in appellant's Ford Mustang. Laura Skufka, a registered nurse, testified that appellant had a mild odor of alcoholic beverage on his breath. She also indicated in her notes that appellant admitted to having a "couple" of drinks that night. Laura Novotney testified that appellant's vehicle approached her at such a tremendous speed that there was a whistling sound. She further stated that appellant crossed the center lane right before her, swerved back, and forced the car ahead of him off the road. Patrolman Anderson testified that appellant acknowledged drinking, that there was an odor of alcoholic beverage on appellant's breath, and that appellant's eyes were watery and bloodshot. Patrolman Anderson also testified that he observed all six clues when he performed the horizontal gaze nystagmus field sobriety test on appellant while at the hospital. Patrolman Anderson stated that his calculation of appellant's minimum speed before impact was sixty-two m.p.h.
Additionally, Karen Manfroni testified to her severe injuries as a result of the accident. Appellant's blood-alcohol test results showed .21 grams percent by weight. Appellant testified that he was not aware of how much vodka was put into the drinks that he consumed because Eric Vasilko was mixing the drinks. Appellant also stated that he "was messing with the stereo" while he was driving. Appellant testified that the posted speed limit was forty-five m.p.h., which was also shown in a photograph admitted into evidence.
In reviewing the record, based on the evidence and all reasonable inferences drawn from it, we cannot say that the jury lost its way and created a manifest miscarriage of justice when it returned a guilty verdict against appellant for aggravated vehicular assault and driving while under the influence of alcohol. There exists substantial evidence upon which a jury could reasonably conclude that all the elements of the charged offenses have been proved beyond a reasonable doubt. The jury verdict is not against the manifest weight of the evidence. Appellant's fifth assignment of error is without merit.
Finally, we will address appellant's sixth assignment of error:
 "[6.] The trial court erred in sentencing appellant to the maximum sentence."
 Appellant's sixth assignment of error sets out the following issue for review and argument: "[w]hether the trial court erred in determining that appellant committed the worst form of the offense of aggravated vehicular assault." Appellant's sixth assignment of error in its entirety states:
 "sentencing occurs. As part of these changes, R.C. 2929.19(B)(2)(d) requires the trial court to state its findings for imposing the maximum prison term. By performing this function, an Appellate Court is able to review the sentences imposed by the various trial court's (sic) within its district to determine, as best as it can, that like crimes receive like punishments. Should this court uphold Mr. Rhodes' conviction, appellant respectfully requests a review of the trial court's findings to determine if this is a case where the `worst form' of the offense was truly committed."
 It is apparent that appellant's sixth assignment of error is incomplete and missing the bulk of his argument and any citation. App.R. 16(A)(7) requires an appellant's brief to include argument, containing appellant's contentions for each assignment of error, and the reasons in support of those contentions with citations to the authorities, statutes, and parts of the record upon which the appellant relies. A reviewing court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based upon. App.R. 12(A)(2).
We are not able to predict what appellant would have argued in his sixth assignment of error, nor are we able to make appellant's arguments for him. Appellant has failed to point to specific "errors" in the record to support his sixth assignment of error. Additionally, the state's appellate brief indicates that appellant's counsel was notified of this omission; however, appellant's counsel elected not to file an amended brief containing the missing argument. Appellant's sixth assignment of error is without merit.
For the foregoing reasons, appellant's six assignments of error are without merit. The judgment of the Lake County Court of Common Pleas is affirmed.
JUDGE DIANE V. GRENDELL, O'NEILL, P.J., FORD, J., concur.
[1] The judgment entry of sentence states that appellant was fined $300; however, the sentencing transcript shows the trial court ordered a $350 fine.
[2] Patrolman Anderson subsequently testified that he wanted to correct one point with his testimony. Patrolman Anderson stated that radius was the total distance around a circle. However, on cross-examination, he stated that was a misstatement because radius was the distance between the edge of a circle and the center.