[Cite as *State v. Ritchey*, 2016-Ohio-2878.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,               CASE NO.  1-15-80

     v.

TYLER D. RITCHEY,                  O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR20150244

Judgment Affirmed

Date of Decision:   May 9, 2016

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Terri L. Kohlrieser* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Tyler Ritchey, appeals the judgment of the Court of Common Pleas of Allen County convicting him of one count of sexual battery and sentencing him to 30 months in prison. On appeal, Ritchey argues that the trial court erred by declaring Ohio's sex offender registration statute constitutional as applied to the crime of sexual battery, specifically R.C. 2907.03(A)(2). For the reasons that follow, we affirm the trial court's judgment.

{¶2} On June 16, 2015, a criminal complaint was filed in the Lima Municipal Court charging Ritchey with one count of rape in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree. Ritchey's case was bound over to the Court of Common Pleas of Allen County, and on July 16, 2015, the Allen County Grand Jury returned a two-count indictment against Ritchey charging him with one count of rape in violation of R.C. 2907.02(A)(1)(c) and 2907.02(B), a felony of the first degree; and one count of gross sexual imposition in violation of R.C. 2907.05(A)(5) and 2907.05(C)(1), a felony of the fourth degree. Ritchey entered pleas of not guilty to both charges on July 22, 2015.

{¶3} Plea negotiations ensued, and on October 28, 2015, Ritchey agreed to plead guilty to one count of sexual battery in violation of R.C. 2907.03(A)(2), a felony of the third degree, which was amended from the first count of rape. In exchange, the State agreed to dismiss the second count of the indictment. That

same day, the court accepted Ritchey's guilty plea and dismissed count two of the indictment.

{¶4} Prior to sentencing, Ritchey filed a motion to declare Ohio's sex offender registration statutes unconstitutional. Specifically, Ritchey argued that the registration requirements, as applied to those convicted under R.C. 2907.03(A)(2), violated the separation of powers doctrine and due process.

{¶5} A sentencing hearing was held on December 14, 2015. Both sides were given an opportunity to present an argument regarding Ritchey's pending motion. After both parties presented their arguments, the trial court found that Ohio's sex offender registration statutes did not violate either the separation of powers doctrine or due process and found that the statutes were constitutional. Thus, Ritchey's motion was denied.

{¶6} The court sentenced Ritchey to 30 months in prison and classified Ritchey as a Tier III sex offender.

{¶7} An entry memorializing the court's denial of Ritchey's motion, as well as an entry memorializing Ritchey's sentence, was filed on December 14, 2015.

{¶8} Ritchey filed this timely appeal, presenting the following assignment of error for our review.

*Assignment of Error*

**THE TRIAL COURT ERRED IN RULING THAT THE CLASSIFICATION OF THE SPECIFIC OFFENSE OF**

**SEXUAL BATTERY, SPECIFIC AS TO THE ELEMENT CHAIN IN R.C. §2907.03(A)(2) (THE OFFENSE OF WHICH MR. RITCHEY WAS CONVICTED), AS A TIER III OFFENSE, IS NOT UNCONSTITUTIONAL FOR VIOLATION OF THE PRINCIPLE OF THE SEPARATION OF POWERS AS REQUIRED BY THE OHIO CONSTITUTION OR FOR VIOLATION OF DUE PROCESS FOR NOT BEING RATIONALLY RELATED TO THE STATED GOALS OF THE LEGISLATION.**

**{¶9}** In his sole assignment of error, Ritchey argues that the trial court erred by finding Ohio's sex offender registration statutes to be constitutional. Specifically, Ritchey argues that Ohio's sex offender registration statues violate the separation of powers doctrine and due process as applied to people convicted of violating R.C. 2907.03(A)(2).[1] We disagree.

**{¶10}** It is well established that "[a] properly enacted statute enjoys a presumption of constitutionality." *Thompson v. Bagley*, 3d Dist. Paulding No. 11-04-12, 2005-Ohio-1921, ¶ 14, citing *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 352 (1994). "Therefore, it is incumbent upon the party challenging the statute to prove beyond a reasonable doubt that the statute violates a constitutional provision." *Id.* Moreover, "[W]here there is more than one possible interpretation of a statute, a court will construe the statute so as to save it from constitutional infirmities." *State v. Haskell*, 3d Dist. Seneca No. 13-03-45, 2004-Ohio-3345, ¶ 21.

---

[1] A person will be found guilty of sexual battery if he engages in sexual conduct with another person, who is not his spouse, when "the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." R.C. 2907.03(A)(2).

*Ohio's History of Sex Offender Registration
and Relevant Case Law*

{¶11} In 1996, the General Assembly enacted H.B. 180, which came to be known as "Megan's Law." Megan's Law created three different categories of sex offenders: sexually oriented offenders, habitual sex offenders, and sexual predators. If a person was convicted of a sexually oriented offense, then he was subject to annual reporting requirements for a ten year period. If the sentencing court found that the offender had a previous conviction for a sexually oriented offense, then Megan's Law required the court to find that the offender was a habitual sex offender, which carried twenty years of reporting requirements. Finally, if an offender was labeled a sexual predator, then he must report every 90 days for the rest of his life, unless the court removed the sexual predator classification.

{¶12} Under Megan's Law, sex offenders had to register with the sheriff in the county where they resided or were domiciled for more than seven days, provide a current residential address, provide the name and address of an employer, a current photograph, and any other information required by the Bureau of Criminal Identification and Investigation. Finally, all sex offenders had to provide the license plate number of any motor vehicle that was owned by the offender and registered in his name.

{¶13} Megan's Law was challenged several times over the years. One such case challenged the constitutionality of Megan's Law under the separation of powers doctrine. *See State v. Thompson*, 92 Ohio St.3d 584 (2001). In *Thompson*, the defendant, Thompson, was convicted of rape, aggravated robbery, and felonious assault. *Id.* at 585. In addition to his prison sentence, Thompson was found to be a sexual predator. *Id.* Thompson appealed this decision to the Second District Court of Appeals, which reversed the trial court's classification of Thompson as a sexual predator and found that Megan's Law violated the separation of powers doctrine "by usurping the trial court's fact-finding role because it prescribes what evidence trial courts must consider in determining whether a sexual offender is likely to reoffend." *Id.*

{¶14} The Supreme Court of Ohio disagreed and reversed the Second District's decision. *Id.* at 588. In doing so, the court found that the factors provided by Megan's Law were mere guidelines and that the trial court retained discretion to classify the offender as a sexual predator. *Id.* at 587-588. Because the General Assembly's enactment of Megan's Law [did] not "encroach upon the trial court in its fact-finding authority, it did not violate the separation-of-powers doctrine." *Id.* at 588.

{¶15} In 2003, Megan's Law was amended by the enactment of S.B. 5. Megan's Law now required a sex offender to register with the sheriff of the county

where they resided or were temporarily domiciled for at least five days, attended school, and/or worked for a period of more than 14 days or for a total of 30 days or more in a calendar year. The amendments also removed a sexual predator's ability to petition the court to remove his designation. Finally, the act made all information given by sex offenders public and directed the attorney general's office to establish an Internet database that could be viewed by the public.

{¶16} In response to Congress's enactment of the Adam Walsh Child Protection and Safety Act ("Adam Walsh Act"), Pub.L. No. 109-248, 120 Stat. 587, which established the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. 16902 et seq., the General Assembly enacted S.B. 10 in 2007. S.B. 10 was enacted with the "intent to protect the safety and general welfare of the people of [Ohio]" and "as a means of assuring public protection." R.C. 2950.02(B).

{¶17} In accordance with the Adam Walsh Act and SORNA, Ohio's prior sex offender classification system was replaced by a three-tiered scheme, which came to be referred to as Ohio's Adam Walsh Act ("the Act"). Further, offenders were classified strictly based on the offense of conviction. The lowest level of offenders was classified as Tier I, which required Tier I offenders to register annually for a 15 year period. R.C. 2950.01(E); 2950.06(B)(1); 2950.07(B)(3). The next level was classified as Tier II, which required Tier II offenders to register

every 180 days for a period of 25 years. R.C. 2950.01(F); 2950.06(B)(2); 2950.07(B)(2). The highest level of offenders was categorized as Tier III, which required all Tier III offenders to register every 90 days for the rest of their lives. R.C. 2950.01(G); 2950.06(B)(3); 2950.07(B)(1).

{¶18} Like its predecessor, the Act has faced many challenges. Two of those challenges were in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, and *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374.

{¶19} In *Bodyke*, three sex offenders challenged the constitutionality of the Act as violating the separation of powers doctrine. 2010-Ohio-2424 at ¶ 29-31. Under the Act at the time, the attorney general's office was charged with reclassifying sex offenders originally classified under Megan's Law, with no involvement by the court system. *Id.* at ¶ 22. "As a result, the trial court [was] stripped of any power to engage in independent fact-finding * * *." *Id.*

{¶20} The Supreme Court of Ohio found that this power granted to the executive branch violated the separation of powers doctrine in two ways. First, "the reclassification scheme vest[ed] the executive branch with authority to review judicial decisions, and it interfere[d] with the judicial power by requiring the reopening of final judgments." *Id.* at ¶ 55. Once the cases were reopened, the court found that the Act vested sole authority in the attorney general to reclassify offenders that were previously classified under Megan's Law. Id. at ¶ 59. Second,

the court found that the Act granted authority to the attorney general to reopen and revise each offender's case, which was an otherwise final decision of the trial court classifying the offender. *Id.* at ¶ 56. In effect, it gave the attorney general authority to reopen final decisions of a trial court.

{¶21} In *Williams*, the appellant, Williams, was convicted of unlawful sexual conduct with a minor in November 2007. 2011-Ohio-3374 at ¶ 1. At sentencing, Williams moved to be sentenced under Megan's Law because his crime was committed prior to the enactment of the Act. *Id.* at ¶ 2. The trial court denied Williams's motion and classified him according to the Act, which required that Williams be classified a Tier II sex offender. *Id.* at ¶ 3. On appeal, Williams argued that the Act cannot be applied to anyone whose offense was committed prior to July 1, 2007 as being an unconstitutional retroactive law. *Id.* at ¶ 4. The court of appeals disagreed and affirmed.

{¶22} Williams appealed to the Supreme Court of Ohio, which reversed the appellate court's decision. In doing so, the court noted that prior to the enactment of the Act, Megan's Law and Ohio's prior sex offender registration requirements were always considered remedial or civil in nature and not punitive. *Id.* at ¶ 10, citing *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, ¶ 29. Over the years, however, several amendments occurred, including S.B. 5 and the Act, which had severely changed the nature of Ohio's sex offender registration requirements. For

example, the requirements for sex offender registration were codified in Ohio's criminal portion of the Revised Code, a sex offender could suffer criminal prosecution for failing to comply with certain registration requirements, the "sexual predator" label was made permanent, classification was based purely on the offender's conviction, and the registration requirements became more demanding and registering was no longer "an inconvenience 'comparable to renewing a driver's license.' " *Id.* at ¶ 11, 14, 16, quoting *State v. Cook*, 83 Ohio St.3d 404, 418 (1998). Given these substantial changes, the court found that the Act was punitive and, thus, it violated Ohio's ban against retroactive laws as applied to those convicted prior to its enactment. *Williams* at ¶ 21.

{¶23} The *Williams* court's decision that the Act was punitive was recently reinforced in the court's decision in *State v. Blankenship*, -- Ohio St.3d --, 2015-Ohio-4624, ¶ 9, 38, in which the court found that Ohio's sex offender registration requirements did not constitute cruel and unusual punishment.

*Separation of Powers*

{¶24} Although not explicitly stated in Ohio's Constitution, "The separation-of-powers doctrine implicitly arises from our tripartite democratic form of government and recognizes that the executive, legislative, and judicial branches of our government have their own unique powers and duties that are separate and apart from the others." *Thompson*, 92 Ohio St.3d at 586, citing *City of Zanesville*

*v. Zanesville Tel. & Tel. Co.*, 63 Ohio St. 442 (1900), paragraph one of the syllabus. The doctrine creates a system of checks and balances so that no single branch overpowers the others and that all three can work together collectively. *Id.*

{¶25} Under Ohio's Constitution, the legislative power resides with the General Assembly. Ohio Constitution, Article II, Section 1. The General Assembly is prevented from exercising any judicial power not conferred upon it in the Constitution. Ohio Constitution, Article II, Section 32. However, "the legislative branch plays an important and meaningful role in the criminal law by *defining offenses and assigning punishment*, while the judicial branch has its equally important role in interpreting those laws." (Emphasis added.) *Bodyke*, 2010-Ohio-2424 at ¶ 48.

{¶26} In this case, we are asked to determine if the Act is unconstitutional, as applied to those convicted of sexual battery in violation of R.C. 2907.03(A)(2), for violating the separation of powers doctrine. We conclude that it is not.

{¶27} Our finding is guided by the Supreme Court of Ohio's decisions in *Thompson*, *Bodyke*, and *Williams*. Before the court's decision in *Williams*, Ohio's sex offender registration requirements were considered remedial in nature. Thus, Megan's Law did not violate the separation of powers doctrine because it did not remove the fact-finding authority from the judiciary. *Thompson*, 92 Ohio St.3d at 588. However, as noted by the court in *Bodyke*, the trial court's discretionary

power to classify sex offenders was removed with the enactment of the Act. *Bodyke*, 2010-Ohio-2424 at ¶ 22. Therefore, it would appear that the Act violates the separation of powers doctrine because it removed the classification power from the judiciary and vested it in the General Assembly.

**{¶28}** However, the Act was declared punitive in *Williams*, and it is widely established that the General Assembly is vested with the power to define offenses and assign punishments. *Williams*, 2011-Ohio-3374 at ¶ 22; *Bodyke* at ¶ 48. Requiring that offenders convicted of sexual battery in violation of R.C. 2907.03(A)(2) be classified as Tier III sex offenders is no different than a mandatory prison sentence, mandatory fine, or any other mandatory punishment that the General Assembly deems necessary. Mandatory sex offender registration and classification does not remove the fact-finding power of the court regarding whether sexual battery was committed. That power remains with the trial court. Rather, the Act provides for an additional punishment for those convicted of sex offenses in Ohio, which remains within the General Assembly's plenary power.

**{¶29}** Accordingly, the Act, as applied to those convicted of sexual battery in violation of R.C. 2907.03(A)(2), does not violate the separation of powers doctrine as it does not usurp the judiciary's role in administering justice.

Case No. 1-15-80

*Due Process*

**{¶30}** "When reviewing a statute on due-process grounds, [an appellate court applies] a rational-basis test unless the statute restricts the exercise of fundamental rights." *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 49, citing *Morris v. Savoy*, 61 Ohio St.3d 684, 688-689 (1991). In this case, the Act does not infringe upon a recognized fundamental right, therefore rational basis review is appropriate. "Under rational-basis review, a statute survives if it is reasonably related to a legitimate governmental interest." *State ex rel. O'Brien v. Heimlich*, 10th Dist. Franklin No. 08AP-521, 2009-Ohio-1550, ¶ 25, citing *Am. Assoc. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 58 (1999).

**{¶31}** The Act's language lays out the General Assembly's purpose in enacting the law. Specifically, R.C. 2950.02(B) states, in part, "it is the general assembly's intent to protect the safety and general welfare of the people of this state."[2] Clearly, protecting the public from sex offenders is a legitimate state interest. *See generally State v. Randall*, 141 Ohio App.3d 160, 163 (11th

---

[2] Although Ritchey argues that the true purpose of enacting the Act was to comply with the Federal Adam Walsh Act to continue to receive federal funds, under rational basis review, a law will be upheld so long as it is rationally related to *any* legitimate interest. *In re B.D.*, 11th Dist. Portage No. 2011-P-0078, 2012-Ohio-4463, ¶ 26, citing *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). Thus, it is of no consequence if the "true purpose" of the statute was to mirror the federal statute's language because protecting the public from sex offenders is a legitimate state interest. *State v. Randall*, 141 Ohio App.3d 160, 163 (11th Dist.2001).

-13-

Dist.2001). Further, the General Assembly laid out its position as to how its legislation was related to its interest;

> The general assembly further declares that it is the policy of this state to require the exchange in accordance with this chapter of relevant information about sex offenders and child-victim offenders among public agencies and officials and to authorize the release in accordance with this chapter of necessary and relevant information about sex offenders and child-victim offenders to members of the general public as a means of assuring public protection * * *.

*Id.*

{¶32} Having sex offenders register with their local sheriff's office and having their information being of public record is related to the overall goal of protecting the public by keeping the public informed of the whereabouts of convicted sex offenders. "While some may question whether the registration requirements are the best way to further public safety, questions concerning the wisdom of legislation are for the legislature." *Blankenship*, 2015-Ohio-4624 at ¶ 37. " '[W]hether the court agrees with it in that particular or not is of no consequence. * * * If the legislature has the constitutional power to enact a law, no matter whether the law be wise or otherwise it is of no concern of the court.' " *Butler v. Jordan*, 92 Ohio St.3d 354, 376 (2001), quoting *State Bd. of Health v. City of Greenville*, 86 Ohio St. 1, 20 (1912). The General Assembly, as being vested with the sole power to make laws, is " 'the ultimate arbiter of public policy.' " *Arbino* at ¶ 21, citing *State ex rel. E. Cleveland Fire Fighters' Assn.,*

*Local 500, Internatl. Assn. of Fire Fighters v. Jenkins*, 96 Ohio St.3d 68, 2002-Ohio-3527, ¶ 12.

{¶33} Accordingly, the Act, as applied to offenders convicted of sexual battery in violation of R.C. 2907.03(A)(2), is not unconstitutional for violating due process as it is reasonably related to a legitimate state interest.

{¶34} Therefore, we overrule Ritchey's sole assignment of error.

{¶35} Having found no error prejudicial to the appellant, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**