[Cite as *State v. Fisher*, 2017-Ohio-7260.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                                   :

    Plaintiff-Appellee,                   :       Case No.   16CA3553

    vs.                                            :

SAMANTHA M. FISHER,                     :       DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.               :

_____

APPEARANCES:

Mark J. Miller, Columbus, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County
Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 8-14-17
ABELE, J.

{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment filed by

Samantha Fisher, defendant below and appellant herein.  Appellant assigns the following errors for

review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN NOT OVERRULING APPELLANT'S
TIER III SEX OFFENDER CLASSIFICATION BECAUSE THE
MANDATORY SEX OFFENDER CLASSIFICATION IMPOSED
UNDER SENATE BILL 10 CONSTITUTES CRUEL AND UNUSUAL
PUNISHMENT AND VIOLATES THE EIGHTH AND FOURTEENTH

AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION."

SECOND ASSIGNMENT OF ERROR:

"THE TIER III SEX-OFFENDER REQUIREMENTS IMPOSED ON APPELLANT ARE UNCONSTITUTIONAL BECAUSE SENATE BILL 10 VIOLATES THE SEPARATION OF POWERS DOCTRINE."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT FAILED TO OVERRULE APPELLANT'S TIER III SEX OFFENDER CLASSIFICATION BECAUSE A SUFFICIENT NEXUS HAS NOT BEEN ESTABLISHED BETWEEN THE AUTOMATIC TIER III CLASSIFICATION OF THOSE IN VIOLATION OF R.C. 2907.03(A)(7), WHEN APPLIED TO INDIVIDUALS LIKE APPELLANT, AND THE GOVERNMENT'S INTEREST IN PREVENTING TEACHERS FROM TAKING UNCONSCIONABLE ADVANTAGE OF STUDENTS."

{¶ 2}   On November 6, 2015, the Ross County Grand Jury returned an indictment that charged appellant with two counts of sexual battery in violation of R.C. 2907.03(7), both felonies of the third degree, after she was charged with engaging in sexual conduct with a 16-year-old student aide while she was a teacher.   Appellant pled not guilty to both counts.

{¶ 3}   On April 5, 2016, appellant withdrew her guilty plea and pled guilty to both counts. On May 3, 2016, current counsel entered his appearance as counsel of record for appellant, and on May 6, 2016, appellant filed a motion to withdraw her plea.   Appellant argued that her prior attorney informed her that sexual battery carried a 10-year registration period, not lifetime registration, and did not inform her of community notification.   Appellant also objected to the Tier III Sex Offender Classification because, appellant argued, the classification violates due process, separation of powers, and constitutes cruel and unusual punishment.

{¶ 4}   On May 23, 2016, the trial court held a hearing for three purposes: (1) to consider the motion to withdraw her plea, (2) to conduct appellant's sexual-offender classification hearing, and (3) to determine appellant's criminal disposition.   The court first denied the motion for leave to withdraw her plea, noting that the trial court had properly notified appellant of the lifetime requirements at the change of plea hearing.   The trial court then moved on to the classification hearing.   The court noted that appellant violated R.C. 2907.03, a Tier III sex offense.   The court instructed appellant on registration requirements and, after appellant's counsel argued that the Tier III classification as applied to appellant is unconstitutional, the court indicated that the classification is set by statute and the court has no discretion in the matter.

{¶ 5}   Turning to the disposition, the victim urged that appellant not be subject to the lifetime registration and notification requirements.   Once again, the court indicated that it had no discretion regarding the mandatory classification.   The judge went on to state "I can't help but look at your life though and think it's been exemplary up to this point.   You did a lot of things that would make me proud if I were your parent of what you've done in your life and I think that is remarkable for you."   However, the court went on to say, "Unfortunately on the other side of the coin is the fact that you took advantage of a child that was in a horrible situation.   His life circumstances made him, perhaps, more vulnerable than most children would be in his position.   There's also the fact that we have to send a message to other teachers and other people in positions of authority that you can't abuse and take advantage of your position of authority and do such things."

{¶ 6}   With that, the court sentenced appellant to serve 60 days in jail, but did allow work release, followed by 90 days of house arrest with work privileges, and required her to perform 200 hours of community service to be completed within 12 months.   Further, the judge ordered appellant

to complete a sex offender class, to be evaluated for substance abuse, to obtain and keep employment, to have no contact with the victim, and have no unsupervised conduct with children under 18 throughout the pendency of the case until completion of community control. This appeal followed.

{¶ 7} On May 25, 2016, appellant filed a motion to stay the registration sex offender classification, registration, and notification requirements pending an appeal. The trial court denied the request. On June 27, 2016, appellant filed a motion to stay registration requirements pending the disposition of her appeal with this court. On July 19, 2016, this court denied the motion.

## I. STANDARD OF REVIEW

{¶ 8} "A statute may be challenged as unconstitutional on the basis that it is invalid on its face or as applied to a particular set of facts." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 17. Here, appellant challenges the Tier III classification as unconstitutional as applied to her, i.e., a twenty-two-year-old adult teacher indicted for offenses committed against a sixteen-year-old student aide. Thus, we use a de novo standard of review to assess errors based upon violations of constitutional law. *State v. Sidam*, 4th Dist. Adams No. 15CA1014, 2016-Ohio-7906, ¶ 19, citing *State v. Burgette*, 4th Dist. Athens No. 13CA50, 2014-Ohio-3483, ¶ 10; *see also State v. Coburn,* 4th Dist. Ross No. 08CA3062, 2009-Ohio-632, ¶ 6.

{¶ 9} The statutes enacted by the General Assembly are entitled to a "strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7. Thus, "if at all possible, statutes must be construed in conformity with the Ohio and the United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). The

Supreme Court of Ohio has held that a court is only permitted to declare a statute unconstitutional if it " 'appear[s] beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *State v. Cook*, 83 Ohio St.3d 404, 409, 700 N.E.2d 570 (1998), quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955).

{¶ 10} In the case sub judice, appellant pled guilty to two counts of sexual battery in violation of R.C. 2907.03, which provides that: "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: (7) The offender is a teacher, administrator, coach, or other person in authority employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code, the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school."

{¶ 11} Senate Bill 10 created a three-tier sex-offender-classification system. R.C. 2950.01(G)(1) lists the offenses that automatically mandate that an offender be classified as a Tier III sex offender. R.C. 2950.01(G)(1)(a) provides that a sex offender who pleads guilty to a violation of R.C. 2907.03 must be classified as a Tier III sex offender. Thus, the trial court classified appellant as a Tier III sex offender as a result of her conviction for two counts of sexual battery in violation of R.C. 2907.03(A)(7). Tier III sex offenders must verify their current residence address or current school, institution of higher education, or place of employment address every 90 days after the offender's initial registration date. R.C. 2950.06(B)(3).

## II. FIRST ASSIGNMENT OF ERROR

{¶ 12} In her first assignment of error, appellant asserts that the trial court erred by not overruling her Tier III sex offender classification because the Senate Bill 10 mandatory sex offender

classification constitutes cruel and unusual punishment and violates the Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 9 of the Ohio Constitution.

{¶ 13} While most states addressing Eighth Amendment challenges to mandatory sex-offender classifications for adults have dismissed those challenges based on their findings that the registration schemes are remedial rather than punitive, the Supreme Court of Ohio has held that the enhanced sex-offender reporting and notification requirements contained in R.C. Chapter 2950 are punitive. *See State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16. "Ohio's current sex-offender-registration statutes create a three-tier classification system. Unlike the earlier 'labeling' classification system under Megan's Law, 146 Ohio Laws, Part II, 2560, in which a judge could consider the characteristics of an offender before sentencing, 'tier' classification is based solely upon the offense for which a person is convicted and the judge has no discretion to modify the classification." *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, ¶ 11, citing *Williams* at ¶ 20.

A. Federal Law

{¶ 14} The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Appellant argues that her automatic classification amounts to cruel and unusual punishment because, she contends, the punishment is disproportionate to the crime. The central focus is that the "punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

{¶ 15} When considering Eighth Amendment challenges, and whether to adopt a categorical rule, the United States Supreme Court has taken the following approach: "The Court first considers

'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. * * * Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose, * * * the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution." *Graham v. Florida,* 560 U.S. 48, 61, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).

*National Consensus*

{¶ 16} With regard to the national consensus prong of the analysis, appellant contends that few people would find it reasonable to require an individual to register as a sex offender when the offender does not share any of the characteristics of a sex offender and when an extremely low risk exists for reoffending, citing *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, ¶ 77 (Pfeifer, J., dissenting). Appellant argues that she engaged in consensual sex with the student aide, and that the trial judge seemed reluctant to classify her as a Tier III sex offender. However, as the state notes, the pre-sentence investigation (PSI) indicated that while appellant's ORAS score was a 7, which is a low risk of reoffending, the PSI also indicated that appellant "has some criminal attitudes, sometimes feels a lack of control over the events in her life, and she agrees with 'do unto others before they do unto you.'"

{¶ 17} Generally, a national consensus favors similar sex offender registration requirements. *See, e.g., Blankenship* at ¶ 36 (Indeed, such sanctions are now the norm, citing *People v. Temelkoski*, 307 Mich.App. 241, 262, 859 N.@.2d 743 (2014) ("all 50 states and the federal government have enacted some form of sex offender registration and notification provisions.")); *Cook*, 83 Ohio St.3d

at 406 (all 50 states have a sex offender registration law and Ohio has had one in place since 1963).

Further, although appellant does not have a prior criminal history, she was a teacher, a position that

the General Assembly, in enacting the subsection regarding teachers, coaches and administrators, has

deemed to have special responsibilities due to the authority that teachers exert over their students.

Thus, we do not find a national consensus would object to appellant's classification as a Tier III sex

offender with its attendant registration and notification requirements.

{¶ 18} We now turn to the second step of our analysis.

*Does the Punishment Violate the Constitution?*

{¶ 19} In determining whether the punishment violates the Constitution, the United States

Supreme Court has set forth a three-step analysis: (1) the culpability of the offender in light of the

crime and characteristics, (2) the severity of the punishment, and (3) the penological justification.

*Graham,* 560 U.S. at 67-68.

*Culpability of the Offender*

{¶ 20} The first consideration in the independent review is assessing the offender's

culpability. *Blankenship*, 145 Ohio St.3d 221 at ¶ 23. As a matter of law, appellant's conviction

for sexual battery makes her a sex offender. R.C. 2950.01(B)(1). Appellant argues that requiring

her to register as a sex offender based solely on the offense committed, and without considering her

character or the nature of the offense, results in excessive punishment. Appellant cites *In re CP.*,

131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 42, to support her argument that the nature

of her offense is mild. However, *In re C.P.* held that "[t]o the extent that it imposes automatic,

lifelong registration and notification requirements on juvenile sex offenders tried within the juvenile

system, R.C. 2152.86 violates the constitutional prohibition against cruel and unusual punishment

contained in the Eighth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 9, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 16." *Id.* at syllabus. We point out that *In re C.P.* involved juvenile offenders, whereas in the case at bar appellant is an adult offender. Further, the Supreme Court of Ohio denied an Eighth Amendment challenge in *Blankenship* even though psychologists determined that Blankenship had a low risk of reoffending. *See Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, at ¶ 3. Moreover, even though appellant argues that she is not a "sex offender," she has been classified as one as a matter of law, and the trial court ordered her to attend sex offender treatment.

{¶ 21} Appellant also argues that the victim in this case consented to the sexual conduct with appellant, that no evidence indicates that the victim suffered any irreparable harm, and that appellant is unlikely to commit another criminal offense. In *Blankenship*, the court noted that the defendant was six years older than the victim and, therefore, deemed more culpable and more deserving of punishment. *Blankenship* at ¶ 24. Here, appellant is also six years older than the victim. While appellant contends that the conduct was consensual, the fact remains that appellant, a teacher, took advantage of an underage student. Appellant also indicated in the PSI report that she knew that the victim's father had recently died, and she took his number to alert him if anyone was looking for him when he was in areas of the school for which he had no authorization. Appellant was the first to text him, and he came to her home twice where the sexual conduct occurred. Appellant is indeed culpable for the criminal acts that she committed.

*Severity of the Punishment*

{¶ 22} The second consideration is the severity of the punishment. Appellant, an adult

teacher, engaged in a sexual relationship with a 16-year-old student aide at her school, fully aware of his age. She could have received a sentence of one to five years in prison for her third-degree felony. Instead, the trial court placed appellant on community control for three years, sentenced her to serve 60 days in jail and 90 days of house arrest, ordered her to attend sex offender treatment, ordered an evaluation for substance abuse, and required her to perform 200 hours of community service and have no unsupervised contact with children under the age of 18.

{¶ 23} In *Blankenship*, the Tier II offender was 21 years of age and the victim was 15 at the time the relationship began. The court concluded "[o]ur research reveals no case in which similar registration and verification requirements have been held to be cruel and unusual punishment." *Blankenship* at ¶ 27. Appellant also argues that she is a low risk offender. The *Blankenship* court rejected a similar argument when the defendant presented evidence from a psychologist that he presented a "low risk" of re-offending. The *Blankenship* court held that while the requirements to register every 180 days for 25 years are burdensome, it did not rise to a constitutional level. *Id.* While appellant's registration requirements are more onerous than a Tier III offender, we find no authority to support the view that the requirements rise to the level of cruel and unusual punishment.

*Penological Justifications*

{¶ 24} The final consideration in an Eighth Amendment analysis is to assess the penological justifications for the sentencing practice. *Graham*, 560 U.S. at 67. As the *Blankenship* court noted, "[t]he stated purpose of S.B. 10 and its registration and community-notification requirements is 'to protect the safety and general welfare of the people of this state.' R.C. 2950.02(B)." *Blankenship* at ¶ 28. The court went on to acknowledge that sex-offender registration schemes have been criticized on the ground that they do not actually serve the intended purpose of community protection. *Id.* at

¶ 29. However, the court concluded that the penological grounds for imposing such requirements are "still accepted in many quarters and are justified in part based upon the perceived high rate of recidivism and resistance to treatment among sex offenders." *Id.* at ¶ 30. Accordingly, we cannot conclude that the registration and notification requirements for Tier III offenders are so unjustified as to constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

### B. Ohio Law

{¶ 25} The Ohio Constitution, Article I, Section 9, contains its own prohibition against cruel and unusual punishment. While it contains the same language as the United States Constitution, it provides unique protection for Ohioans. *See Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. Cases involving cruel and unusual punishment are rare, "limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70, 203 N.E.2d 334 (1964). "A punishment does not violate the constitutional prohibition against cruel and unusual punishments, if it be not so greatly disproportionate to the offense as to shock the sense of justice of the community." *State v. Chaffin*, 30 Ohio St.2d 13, 282 N.E.2d 46, paragraph three of the syllabus (1972).

{¶ 26} Ohio courts have held that the reporting requirements for Tier I and Tier II sex offenders do not constitute cruel and unusual punishment. *See, e.g., State v. Conley*, 9th Dist. Summit No. 27869, 2016-Ohio-5310; *State v. Bradley*, 1st Dist. Hamilton No. C-100833, 2011-Ohio-6266. This court sees no reason not to apply this rationale to Tier III offenders. With R.C. 2907.03(A)(7), the General Assembly codified an intention to protect school children from adults in positions of authority. In this case, appellant, a teacher, used her position of authority to

develop a sexual relationship with a 16-year-old child, a student aide in her classroom. We conclude that based on existing authority and the reasoning behind Senate Bill 10's protections, to require appellant to register every 90 days for life does not shock the sense of justice in the community, and thus does not violate the Ohio Constitution's prohibition against cruel and unusual punishment. Appellant's first assignment of error is overruled.

### III. Second Assignment of Error

{¶ 27} In her second assignment of error, appellant asserts that the Tier III sex-offender requirements are unconstitutional because Senate Bill 10 violates the separation of powers doctrine. Appellant argues that under Senate Bill 10, the judiciary's function is simply ministerial when issuing a judgment to validate what the legislative branch has already finalized.

{¶ 28} Although not explicitly stated in Ohio's Constitution, "[t]he separation-of-powers doctrine implicitly arises from our tripartite democratic form of government and recognizes that the executive, legislative, and judicial branches of our government have their own unique powers and duties that are separate and apart from the others." *State v. Thompson,* 92 Ohio St.3d 584, 586, 752 N.E.2d 276 (2001), citing *City of Zanesville v. Zanesville Tel. & Tel. Co.*, 63 Ohio St. 442, 59 N.E. 109 (1900), paragraph one of the syllabus. "It has long been recognized in this state that the General Assembly has the plenary power to prescribe crimes and affix penalties." *State v. Morris*, 55 Ohio St.2d 101, 112, 378 N.E.2d 708 (1978).

{¶ 29} The Third District considered the question of whether S.B. 10 is unconstitutional, as applied to those convicted of sexual battery in violation of R.C. 2907.03(A)(2), for violating the separation of powers doctrine in *State v. Ritchey*, 3d Dist. Allen No. 1-15-80, 2016-Ohio-2878. The court pointed to *Thompson*, *State v. Bodkye,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753,

*and State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108.   The Third District

noted that before the Supreme Court's decision in *Williams*, Ohio's sex offender registration

requirements were considered remedial in nature.   Therefore, Megan's Law did not violate the

separation of powers doctrine because it did not remove the fact-finding authority from the judiciary.

 *Thompson* at 588.

{¶ 30} Now, however, the classification discretion has been removed from the judiciary and

vested in the General Assembly.   The Supreme Court also later declared the Act punitive in

*Williams*.   The *Ritchey* court concluded that requiring offenders convicted of sexual battery in

violation of R.C. 2907.03(A)(2) to be classified as Tier III sex offenders "is no different than a

mandatory prison sentence, mandatory fine, or any other mandatory punishments that the General

Assembly deems necessary.   Mandatory sex offender registration and classification does not remove

the fact-finding power of the court regarding whether sexual battery was committed.   That power

remains with the trial court.   Rather, the Act provides for an additional punishment for those

convicted of sex offenses in Ohio, which remains within the General Assembly's plenary power.

Accordingly, the Act, as applied to those convicted of sexual battery in violation of R.C.

2907.03(A)(2), does not violate the separation of powers doctrine as it does not usurp the judiciary's

role in administering justice." *Ritchey at* ¶ 28-29.   We agree.   Although appellant's convictions

involve a different subsection of the sexual battery statute, this case involves the same crime and

same Tier III classification.

{¶ 31} Moreover, this court has held that a Tier III sex offender classification "is nothing

more than a collateral consequence arising from *** criminal conduct, and because [the defendant]

has no reasonable expectation that [the defendant's] 'criminal conduct would not be subject to future

versions of R.C. Chapter 2950,' it cannot be said that SB 10 abrogates final judicial determinations."

*State v. Coburn*, 4th Dist. Ross No. 08CA3062, 2009-Ohio-632, ¶ 18. Appellant's second assignment of error is overruled.

## IV. THIRD ASSIGNMENT OF ERROR

{¶ 32} In her third assignment of error, appellant asserts that the trial court erred when it failed to overrule appellant's Tier III sex offender classification because a sufficient nexus had not been established between the automatic Tier III classification of those in violation of R.C. 2907.03(A))(7), when applied to individuals like appellant, and the government's interest in preventing teachers from taking unconscionable advantage of students.

{¶ 33} The state first points out that this issue was not raised or addressed at the trial court level. "The failure to raise at the trial court level the issue of constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. However, reviewing courts do have discretion to consider a forfeited constitutional challenge to a statute. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. "Even when waiver is clear, the court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus.

{¶ 34} Turning to the potential merits of appellant's argument, the Fourteenth Amendment to the United States Constitution provides that "no State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Appellant does not claim that the classification

involves a fundamental right or a suspect class; thus, the standard of review is the "rational basis" test, which requires that the statute be upheld if it is rationally related to a legitimate governmental purpose. *See State v. Peoples*, 102 Ohio St.3d 460, 2004-Ohio-3923, 812 N.E.2d 963. "The appropriate standard of review is whether the difference in treatment between [the affected class and those outside the class] rationally furthers a legitimate state interest. In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification." *Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

{¶ 35} Appellant raises an as-applied constitutional challenge to the application of R.C. 2907.03(A)(7). A successful as-applied challenge would exempt appellant from a statute's application, but the statute would remain otherwise enforceable. *See Yajnik v. Akron Dept. of Health, Hous. Div.,* 101 Ohio St.3d 106, 109, 2004-Ohio-357, 802 N.E.2d 632. Appellant argues that the sweep of the statute should not encompass consensual sexual activity and those offenders who are determined to pose little to no threat of re-offending. Appellant argues that "[t]here is no evidence in this case that Ms. Fisher engaged in any violence or coercion against her student aid (sic.). R.C. 2907.03(A)(7) is, she argues, therefore unconstitutional under the facts of this case because it is not rationally related to its intended purpose of preventing teachers from taking *unconscionable advantage* of students by using their undue influence over their students in order to pursue sexual relationships." We disagree.

{¶ 36} The rational-basis test involves a two-step analysis. "We must identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 9, citing *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.*,

73 Ohio St.3d 260, 267, 652 N.E.2d 952 (1995); *Pickaway Cty. Skilled Gaming v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 19.

*State Interest*

{¶ 37} With regard to the intent prong of the analysis, we highlight the Supreme Court's recent analysis of a different subsection of R.C. 2907.03, (A)(13), involving peace officers. *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, _ N.E.3d _. R.C. 2907.03(A)(13) provides: "No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: (13) The other person is a minor, the offender is a peace officer, and the offender is more than two years older than the other person."

{¶ 38} The Supreme Court noted that the General Assembly created the offense of sexual battery, R.C. 2907.03, to prohibit "sexual conduct with a person other than the offender's spouse in a variety of situations where the offender takes unconscionable advantage of the victim.' Legislative Service Commission 1973 Comment to R.C. 2907.03 as enacted by Am.Sub.H.B. No. 511." *Mole* at ¶ 34. Similarly, the court stated that "the purpose of R.C. 2907.03 is to protect particularly vulnerable people, including minors and others who are legally unable to consent to sexual activity, from the harms that flow from sexual conduct. But in doing so, the General Assembly focused its criminalization of sexual conduct on those who use their professional status to take unconscionable advantage of minors, * * *." *Id.* at ¶ 43.

{¶ 39} The court went on to find that the state does have a compelling interest to protect minors from sexual coercion and an interest to prohibit peace officers from abusing their authority in order to sexually exploit minors. However, the court struck down that subsection of the statute, holding that it is not rationally related to a legitimate governmental purpose, and thus declared it to

be unconstitutional on its face because the government intended to punish a class of professionals without making a connection between the classification and the prohibited act. *Id.* at ¶ 70. The court focused on the fact that peace officers are liable under the statute even if they did not use their status as peace officers to identify potential victims and abuse them.

{¶ 40} Certain aspects of *State v. Mole* are relevant to this case. For example, the court stated that "R.C. 2907.03 is generally a valid scheme insofar as it imposes strict liability for sexual conduct on various classes of offenders who exploit their victims through established authoritarian relationships." *Id.* at ¶ 2. The court found that subdivision (A)(13) irrationally imposes the same strict liability on peace officers even when there is no occupation-based relationship between the officer and the victim.

{¶ 41} However, rather than calling for the same result in this case, we believe that *Mole* in fact supports our view. First, *Mole* involved an equal protection challenge both under the United States Constitution and the Ohio Constitution, and the Court focused heavily on the fact that the court has autonomy under the Ohio Constitution "to interpret our Constitution to afford greater rights to our citizens when we believe that such an interpretation is both prudent and not inconsistent with the intent of the framers." *Id.* at ¶ 21. In the case sub judice, appellant challenges the statute under the United States Constitution. Further, *Mole* reaffirmed that "statutes are presumed to be constitutional and * * * courts have a duty to liberally construe statutes in order to save them from constitutional infirmities." *Id.* at ¶ 27. Moreover, "[t]he party challenging the constitutionality of a statute 'bears the burden to negate every conceivable basis that might support the legislation.'" *Id.*

{¶ 42} Most important, *Mole* reviewed the historical background of R.C. 2907.04 and strict-liability sex crimes based on relationships. "When enacting the new R.C. Chapter 2907, the

General Assembly intended that private sexual conduct between consenting adults ought not be criminalized but that the law ought to proscribe sexual conduct that is assaultive, that involves the young and immature, or that carries a significant risk of harm. The seriousness of harm or risk of harm is based on one or more of four factors: 'the type of sexual activity involved; the means used to commit the offense; the age of the victim; and *whether the offender stands in some special relationship to the victim.*' " *Id.* at ¶ 32, citing Ohio Legislative Service Commission, *Summary of Am.Sub.H.B. 511* 13 (Dec. 1972) (Emphasis sic.) "Using the above four factors, the General Assembly created a new offense of sexual battery, R.C. 2907.03, to prohibit 'sexual conduct with a person other than the offender's spouse in a variety of situations where the offender takes unconscionable advantage of the victim.' " *Id.* at ¶ 34, citing Legislative Service Commission 1973 comment to R.C. 2907.03 as enacted by Am.Sub.H.B. No. 511.

{¶ 43} The court noted that the statute was amended in response to incidents involving inappropriate sexual conduct committed by adults who had special authoritative relationships with minors or other vulnerable populations, but who were not covered by subdivisions (1) through (6) of the statute. *Id.* at ¶ 35. The court concluded that the foregoing history "demonstrates that the purpose of R.C. 2907.03 is to protect particularly vulnerable people, including minors and others who are legally unable to consent to sexual activity, from the harms that flow from sexual conduct." *Id.* at ¶ 43. Although appellant argues that the sexual conduct in this case was consensual, we believe that the statute exists to protect the vulnerable, a legitimate state interest.

*Rationally Related to Legitimate State Interest*

{¶ 44} The second prong of the Equal Protection analysis is whether the legislative distinction bears a rational relationship to the legitimate state interest. The court held that the sexual

conduct at issue in *Mole* is unrelated to Mole's professional status, a fact that is distinguishable from our analysis in the case sub judice, in which appellant's status as a teacher is very much related to the sexual conduct at issue. The court concluded, "it is the access provided by the occupational relationship, and not the occupation by itself, that creates the risk of harm" *Id.* at ¶ 57.

{¶ 45} While the court found that R.C. 2907.03(A)(13) violated Equal Protection on its face, *Mole* only applies to the peace officer portion of the statute, and we see clear support in the opinion to continue to uphold subsection (7) due to the occupational authoritative relationship of a teacher and student.

{¶ 46} Although the appellant describes the sexual conduct in the case at bar as consensual, it does not erase the fact that appellant was employed as a teacher, an authority figure who the General Assembly has deemed is, and should be, held to a higher standard due to the control teachers exert in student's lives. This is the sort of behavior the legislature intended to punish, if not thwart, by specifying the teacher, coach, administrator portion of R.C. 2907.03 sexual battery.

{¶ 47} Consequently, in this case we hold that R.C. 2907.03(A)(7) is rationally related to its intended purpose to prevent teachers from taking unconscionable advantage of students by using undue influence over the students to pursue sexual relationships. Because appellant did not demonstrate how the statute as applied violates the Equal Protection Clause, we find no error, overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment is affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Supreme Court of Ohio in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.